## CHARLES H. CONGDON

v.

## HOWE SCALE COMPANY.

January Term, 1894.

*Evidence. Similar use. Latitude in cross-examination. Inspection after accident. Charge of court.*

1. Upon the question whether the defendant properly guarded an emery wheel, by the bursting of which the plaintiff was injured, evidence that other manufacturers did not use guards with·similar wheels is inadmissible, it not appearing that the conditions as to the speed, etc., were the same. Whether such evidence would be admissible if the conditions were shown to be the same is not decided.

2. The plaintiff claimed damages for personal injuries caused by the bursting of an emery wheel. The evidence of the defendant tended to show that the plaintiff's injuries were slight and largely feigned. *Held*, that the supreme court could not affirm error from the fact that the defendant was permitted to show upon the cross examination of the plaintiff that he held an accident insurance policy, under which he was paid for twenty-six weeks lost time, the purpose for which such cross-examination was allowed not appearing.

3. As bearing upon the question what collars or washers were next the wheel at the time it burst, a witness may testify that after the accident he fitted the collar upon the arbor to the indentation in the piece of wheel.

4. *Held*, that the charge sufficiently complied with the plaintiff's requests.

Case for the negligence of defendant. Plea, the general issue. Trial by jury at the March term, 1892, Rutland

county, Ross, C. J., presiding. Verdict and judgment for the defendant. The plaintiff excepts.

The plaintiff was employed by the defendant in finishing small castings, in the course of which he had to use an emery wheel. The work was by the piece and the tools and machinery were furnished by the defendant. The plaintiff was injured by the bursting of one of these emery wheels, while in the defendant's service.

The evidence of the plaintiff tended to show that he found the wheel in question under the bench where he was at work and took it to defendant's foreman, asking him whether he might not use it, being told by said foreman that he might; that in consequence he put the wheel onto the arbor and started it, whereupon, soon after coming up to speed, it burst, striking him in the abdomen, and inflicting serious injuries; that the wheel was of an inferior grade, and only rated for 1,900 revolutions per minute, while the speed of his arbor was 2,700, and that the defendant had provided no guard to prevent the pieces from striking the workman in case the wheel did burst.

The evidence of the defendant tended to show that its foreman, upon being applied to as above, directed the plaintiff not to use the wheel, and that guards were not required or used. Upon the last point the defendant introduced one Cook, who testified, against the plaintiff's exception, that he was familiar with the use of emery wheels, and had been in many places where such wheels were used and that he had only seen guards in one or two cases.

The defendant also claimed that when the plaintiff put the wheel onto the arbor he fitted on the collar and washers improperly and in such a manner that when screwed up close against the side of the wheel it was thereby cracked. As tending to show which washer was next the wheel one Webster was permitted to testify, under the plaintiff's exception, that after the accident he fitted one of the washers

which he found upon the arbor, into the indentation upon the pieces of wheel. Both the washer and pieces were in court and examined by the jury.

The plaintiff requested the court to instruct the jury as follows :

"When a man is employed to work upon and about dangerous machines, it is the duty of the employer to use care and prudence in the selection of the machines and in placing guards and protections around them, and in providing rules and regulations for their use and operation corresponding to the hazard involved in their use, and the employee has a right to rely upon the performance of that duty by the employer. The degree of care that he would be bound to exercise would be greater in proportion as the machinery was more dangerous.

"When the wheel in question was left in the shop with the other tools and machinery, with no mark or indication that it was unsafe for use, the plaintiff had a right to presume that the wheel had been properly tested and was safe for use on the arbor provided for it, unless it is found that he was warned not to use it in such a manner as would prevent a man in the exercise of ordinary care from using it.

"The plaintiff had a right to presume that the speed of the arbor was sufficiently less than the maximum capacity of the wheel to resist, so that he would not be endangered by the ordinary variation of the speed of the arbor, and he had the right to rely upon his employer's full knowledge of the strength and capacity of the wheel as well as the speed of the shaft, and if he did and the wheel was unsuitable and unsafe, and the defendants had not used all proper and necessary precaution to test it, and to provide guards and the like, and by reason thereof the plaintiff received the injuries complained of, the defendants are liable, and the plaintiff would be entitled to recover.

"The work of the plaintiff was job work, and he had the right to use any of the tools that were placed in the shop for use about his work that he deemed suitable for his purposes, and the defendants were bound not to leave dangerous tools about the shop apparently for use without sufficiently warning the plaintiff of their danger."

The court refused to comply with the requests, but

charged upon their subject matter in the following language:

"The only fault or negligence that the plaintiff claims that the defendant was guilty of with reference to him, was in reference to his emery wheel. He claims that this emery wheel was an unsuitable tool for him to use, made as it was, and unguarded as it was.

"Now, gentlemen, take this up and consider it in order; was the defendant guilty of any negligence, or guilty of acting as a prudent man would not have acted, in having this unguarded? You have heard the evidence about that. An emery wheel from its very construction and use must be so left that it can be used, that it can be got at in some place, that it can be used for the purposes of an emery wheel. They have explained to you what the purposes are that an emery wheel is used for. You have heard described to you how they have guarded them, and how they were proposing to guard this, at this time, before this accident happened. If you think they ought to have been guarded, that this one ought to have been guarded, that a prudent man, having reference to the dangers incumbent upon operating an emery wheel, and the nature of this emery wheel, would and ought to have guarded it—yet you must go farther, and find that the failure to guard it was the occasion of this injury. If, in order to use the emery wheel at all the guarding must have left a space where the broken fragment would have struck him, why then, he has not been damaged by any failure to guard it. You have heard the testimony about that. But was the defendant guilty of any negligence in failure to guard it? What does the proof satisfy you of in regard to this? It seems that the foreman of the shop, the present foreman of the shop here, and before where he has been, has guarded this class of wheels, but as I remember it —you will remember how that was, how the testimony was —all classes of wheels, thinking that they needed guarding. How is it generally used? Is it usually guarded, or unguarded, and was the defendant under the circumstances under a duty to this plaintiff to have that emery wheel guarded? Did he owe him that duty from the way emery wheels have been used and were being used? From the accidents that happened in this shop and were likely to happen, and from the protection, if any, that such guarding

would give to the plaintiff? There has been some testimony of the defendants and of this Mr. Cooke that came here, that generally emery wheels, even of this class, were not guarded; that this shop and one other were exceptions to the rule, even of this class of emery wheels, as I remember it, you will remember how that was.

"The next claim of negligence is, that this emery wheel, from its construction, the way it is constructed, and the material with which it is made, from its inherent nature, is an unsafe and improper wheel for any prudent man to use. I do not understand that they claim that there was anything about this wheel in its manufacture, that it failed to be as well manufactured as ordinary wheels of this kind and of this maker's manufacture; that there was anything in it that could be discovered by examination, so that this defendant ought to have seen that this was an improper wheel, while wheels of this manufacture and make ordinarily were safe and proper wheels to operate. Take just what knowledge this defendant had of these wheels; just what their nature and their operation has been so far as you know it, not only in this shop but elsewhere. Is it a safe and proper wheel for a manufacturer, a prudent manufacturer to use? Well, if you find that the plaintiff has failed to establish that it is an improper and unsafe wheel for a prudent manufacturer to use, why then he has failed to make out any negligence on the part of the defendant, and your verdict should be for the defendant, and that, too, without considering whether the plaintiff used that wheel without any right or authority to do so.

"And then there is a further question, and that is, whether he did use it without right or authority to do so. The plaintiff did not say that he was misled at all by the wheel lying there, that he took it up and went to using it, supposing it was safe. He saw it was of a different make than the wheel that he had been using, and the wheel that was on the arbor, and so he took it to the assistant foreman of the shop and inquired of him. You remember the inquiry, whether this wheel was a proper wheel for him to use in this work, asking him what was the matter with that wheel, and he says the foreman replied, nothing, as I remember his testimony. The assistant foreman says that he told him not to use it.

"The plaintiff does not put his case in using it upon the ground that he was misled by its lying there; that he supposed it was a proper wheel to use from the fact of its lying there, and it being the proper thickness to use, went and used it, but says that he knew it was a different wheel from the wheel he had been using, and so he went to the assistant foreman, taking the two wheels with him—I don't remember whether he says he took both or only one—but the assistant foreman says he brought the two wheels, this wheel and a vulcanized wheel, and made inquiry. That impliedly is to the effect that the plaintiff thought he ought not to have used the wheel as he found it without some inquiry about it. At least, he did not attempt to do it without some inquiries, and if he got the answer that he says he did, then he was authorized to use it, and use it in a prudent manner; but if he got the answer that the assistant foreman says he gave him, then the plaintiff would be using that wheel at his own risk and at his own peril, because he was using it against the order of the person who had a right to give orders for the defendant. And no matter whether it is a proper wheel, no matter whether the arbor would run at a proper speed, no matter whether it should be guarded, if he undertook to use it against the order of the assistant foreman, he did it at his own peril and his own risk, and your verdict should be for the defendant."

To the refusal of the court to charge as requested and to the charge as given upon the subject matter of the requests, the plaintiff excepted.

*Butler & Moloney* for the plaintiff.

The defendant was improperly allowed to show that the plaintiff had an accident policy. That could have no relation to this case. *Mobile Life Ins. Co.* v. *Brame*, 95 U. S. 754; *Conn. Mut. Ins. Co.* v. *N. Y. & N. H. Rd. Co.*, 25 Conn. 265; *Harding* v. *Townsend*, 43 Vt. 536.

The testimony of Cook as to what he had seen in other shops as to guards was inadmissible. It did not even appear that the conditions were the same. *Haynes* v.

*Burlington*, 38 Vt. 350; *Carpenter* v. *Corinth*, 58 Vt. 214; *Hine* v. *Pomeroy*, 40 Vt. 103; *Aiken* v. *Kennison*, 58 Vt. 665; *Harris* v. *Howard*, 56 Vt. 695; *Walworth* v. *Barrow*, 54 Vt. 677.

The testimony of Webster was as to a conclusion which the jury could themselves draw from an inspection of the wheel and washer.   He was not an expert, nor was that the subject of expert testimony.   *Carpenter* v. *Corinth*, 58 Vt. 214; *Stowe* v. *Bishop*, 58 Vt. 498; *Clifford* v. *Richardson*, 18 Vt. 626; *Frazer* v. *Tupper*, 29 Vt. 409.

*J. C. Baker* for the defendant.

The cross-examination of the plaintiff as to his insurance policy was not to show that he had received compensation for his injuries, but that those injuries were feigned and slight.   Great latitude is allowed upon cross-examination in cases of this character.   *Briggs* v. *Railroad*, 72 N. Y. 26; 1 Thomp. Tr., s. 415; *Miller* v. *Smith*, 112 Mass. 470; *State* v. *Bollins*, 33 Kan. 77; *Rea* v. *Missouri*, 17 Wall. 532; *Sanborn* v. *Cole*, 63 Vt. 570; *Williams* v. *Wager*, 64 Vt. 326.

That guards were not ordinarily used might be shown. *Augerstein* v. *Jones*, 139 Pa. St. 183; *Anderson* v. *Ford*, 139 Pa. St. 261.

START, J.   The plaintiff claimed, and his evidence tended to show, that the injury in question was caused by the bursting of an emery wheel, furnished for his use while in the defendant's service; that the wheel was of an inferior grade; that its rated capacity was nineteen hundred revolutions per minute; that the arbor upon which it was placed made twenty-seven hundred revolutions per minute; that this was beyond the resisting capacity of the wheel; that he was ignorant of the capacity of the wheel; that the defendant was negligent, in that it allowed the wheel to be used

upon an arbor thus revolving, without a guard to protect its workmen; and that a proper guard would have prevented the injury.

The defendant was allowed to show, subject to the plaintiff's exception, what the practice had been in other shops in respect to guarding such wheels. In this the plaintiff claims there was error, because it did not appear that wheels in other shops were used under conditions similar to those under which the wheel in question was used. It is not claimed that such conditions were shown, but it appears, from an examination of the testimony referred to upon this subject, that they were not. Without deciding whether such testimony is admissible under any circumstances, we hold that the testimony should have been excluded. What other manufacturers had done with wheels under conditions not shown to have been similar to those under which the wheel in question was used, furnished no guide to the jury, by which they could properly decide whether the defendant was negligent; and this evidence may have led them to a wrong conclusion. Wheels in other shops may have been used under conditions that would not require a guard to protect the workmen. These conditions not having been shown by the evidence, the jury may have found, from such use, that it was prudent and safe to use such wheels without a guard under all conditions. The plaintiff did not claim that it was not safe to use the wheel without a guard, under any conditions, but claimed that it was unsafe to so use it at a speed beyond its rated capacity. It might be safe and prudent to use a wheel on an arbor revolving nineteen hundred times per minute, without a guard, but this fact would not furnish a standard by which to determine the degree of care and prudence required when the same wheel is revolved twenty-seven hundred times per minute. The degree of care and prudence required of a master for the safety of his servants, cannot be measured by the care and prudence ex-

ercised by other masters under conditions not shown to be similar. *Haynes* v. *Burlington*, 38 Vt. 350; *Hine* v. *Pomeroy et al.*, 40 Vt. 103; *Carpenter* v. *Corinth*, 58 Vt. 214.

The defendant, against the objection and exception of the plaintiff, was allowed to show, upon cross-examination of the plaintiff, that he held a policy of insurance against accidents, and that he was paid under the policy for twenty-six weeks of lost time. The defendant claimed, and its evidence tended to show, that the plaintiff's injuries were slight and largely feigned. The exceptions do not show the purpose for which this testimony was received; but, if it was admissible upon any issue of the case, or by reason of any claims made by the plaintiff in his direct examination, the contrary not appearing, it is to be presumed that the court admitted it upon such issue or because of such claims, and that the court properly instructed the jury as to its use. Great latitude is allowed in conducting a cross-examination. Especially is this true, when a party claiming damages on account of a personal injury takes the stand for the purpose of proving the extent of such injuries. For the purpose of testing the truthfulness of a witness, it is proper to show upon cross-examination his interest, motive, inclination and prejudice. In view of the respective claims of the parties and the great latitude allowed on the cross-examination of a party or witness, we are not prepared to say that this was not proper cross-examination.

The testimony of E. H. Webster was properly received. He examined the broken wheel after the accident and found marks thereon, and that the collars fitted these marks. The broken wheel and the collars were in court and could have been examined by the jury, but this did not preclude the defendant from showing in what condition they were found after the accident.

A majority of the court are of the opinion, that, so far as the

plaintiff's requests were sound and applicable to the case, they were complied with; and, while some expressions in the charge, disconnected from the charge as a whole, might be misleading, the charge, as a whole, correctly stated the law applicable to the case,

*Reversed and remanded.*