Rockingham, }
Oct. 5, 1909. }

## HOXIE *v.* WALKER.

The assertion in an opening statement of a fact or conclusion which counsel is entitled to demonstrate by additional testimony, or by argument from evidence already adduced by the opposite party, is not exceptionable.

Remarks of counsel which were not made for the purpose of improperly influencing the jury and which had no such effect do not furnish cause for setting aside a verdict.

A bill rendered is itself the best evidence upon the question whether its items were dated.

In an action for alienation of affections, evidence that the defendant caused the plaintiff's husband to be ejected from her premises is admissible to disprove allegations of undue intimacy; and such testimony is not rendered inadmissible by the fact that the ejection was subsequent to the commencement of suit.

A witness who denies having a conversation testified to by others may be permitted to state that the imputed language, if used, had no reference to the subject to which the adverse party seeks to apply it.

Where a person charged with improper conduct is informed that his house is under surveillance, his manifestation of indignation is not such an assertion of innocence as to render evidence thereof inadmissible as a self-serving declaration.

CASE, for alienation of the affections of the plaintiff's husband. Trial by jury and verdict for the defendant. Transferred from the January term, 1908, of the superior court by *Pike*, J.

In his opening statement the defendant's counsel, after declaring that he should show that the plaintiff's husband was a very immoral man, said: "And it is his affections that Mrs. Walker should pay $50,000 for. Mrs. Lawrence, egging her on —." At this point he was interrupted by the plaintiff's counsel, who excepted to the unfinished remark, on the ground that counsel was arguing the plaintiff's evidence. Thereupon the defendant's counsel said he should show that Mrs. Lawrence was egging the plaintiff on; but no evidence was introduced by the defendant to prove that statement, although Mrs. Lawrence had testified for the plaintiff that she and the plaintiff had been intimate friends for some years, that she made minutes of conversations of a compromising nature she overheard between Mr. Hoxie and the defendant, and that the plaintiff visited the Lawrence home to talk with a witness about the case.

The plaintiff having objected to certain evidence offered by the defendant, which gave rise to some discussion, the defendant's counsel said: "You may take the exception to all that. We don't care about the exceptions; we want to go along with the business." The plaintiff excepted to this remark, and the defendant's counsel said: "That's all right."

The defendant, having stated that her relations with Hoxie were of a business nature, testified that after her husband's death Hoxie presented to her a bill for work done about the house. After examining the bill, she testified that it was presented about November 28; that she hesitated about paying it and consulted counsel about it, after which she paid it December 30. Counsel then offered to exhibit the bill to the jury to show the absence of dates upon it. It was admitted for that purpose, and the plaintiff excepted.

The plaintiff introduced evidence that during the time of the alleged intimacy a servant of the defendant let the plaintiff's husband into the defendant's house. Subject to exception, the defendant introduced evidence that on one occasion some two months after the suit was brought, the same servant ejected Hoxie from the defendant's yard.

Mrs. Sise, a witness for the defendant, having testified that she did not have certain conversations with the defendant by tele-

phone, as testified to by the plaintiff, was asked whether that language, if used, referred to the relations between the defendant and Hoxie. The question was allowed, and the plaintiff excepted.

A witness for the defendant testified that he heard a rumor that the defendant's house was being watched and that he informed her of it. Subject to exception, he was asked what her appearance was when he told her of the rumor, and replied: " Well, of course it is hard for me to describe it; she was most indignant."

*Henry F. Hollis* and *Samuel W. Emery, Jr.*, for the plaintiff.

*Page & Bartlett, Frink, Marvin & Batchelder,* and *Eastman, Scammon & Gardner,* for the defendant.

WALKER, J. 1. The plaintiff's evidence tended to show that Mrs. Lawrence had been an intimate friend of the plaintiff for eleven years, and took much interest in the preparation of the case for the plaintiff and assisted her in procuring evidence. One inference that might be legitimately drawn from this testimony was that Mrs. Lawrence was not a disinterested witness; it bore directly on her credibility. The statement of the defendant's counsel, therefore, that Mrs. Lawrence was urging the plaintiff on in this suit, or was " egging her on," was the assertion, not of a fact of which there was no evidence, but of a fact or a conclusion which counsel was justified in saying he would demonstrate; and clearly he would be entitled to demonstrate it by additional evidence, or by argument from the plaintiff's evidence. The suggestion that counsel was thus attempting to argue the case in his opening statement does not appear to be in accordance with the fact, for he was not allowed to finish the sentence. What he intended to say to the jury is not apparent and consequently no error was committed, even if it is error for counsel to indulge in argument when opening his case.

2. The remarks of the defendant's counsel caused by the plaintiff's taking exceptions to some of the defendant's testimony do not appear to have been made with the purpose of influencing the jury against the plaintiff, or to have had that effect. They were made during the course of a heated trial; and if for any reason they were improper, or were spoken in an offensive manner, the presiding justice in the exercise of his discretionary power could have corrected any unfair influence they were calculated to produce in the minds of the jury. No question of law is presented by this exception.

3. The bill which the defendant paid Hoxie was submitted to

the inspection of the jury, to show that the items were not dated; and the only materiality of that fact was that it furnished some reason for the defendant to hesitate about paying it, as she had testified. It was in evidence that she and Hoxie had some business relations soon after the death of her husband and that the bill in question related thereto. If her testimony was true, it might be inferred that Hoxie's visits to her were in part, at least, for the transaction of business with her and the presentation of his bill for services rendered to her husband. It is conceded that the bill bore no dates, and she testified that she took advice about paying it made out in that way. From this it could be argued that her relations with Hoxie were not particularly intimate, for if they were she would not be likely to question his account. The point thus presented was whether the items of the bill were in fact dated. The bill itself was the best evidence upon that subject, and its inspection by the jury for the purpose of determining that fact was proper. While this evidence may not have been of great materiality, its admission under the circumstances was not error. Upon the point then in issue it was not in the nature of hearsay evidence, but original evidence in proof of a physical fact.

4. The plaintiff claimed that the defendant harbored the plaintiff's husband in her house and encouraged him to come there for improper purposes, and submitted evidence that for a certain period before the date of the writ he was frequently there. In explanation of these visits, the defendant's evidence tended to show that the plaintiff's husband was at her house upon business relating to the repair of her house, and that for that reason alone she allowed her servant to admit him; and to prove that she allowed him to be there only on matters of business,—that such was her course of conduct toward him (*Kenney* v. *Hampton*, 73 N. H. 45),—she was allowed to introduce evidence that some two months after the suit was brought her servant, presumably under her direction, ejected the plaintiff's husband from the defendant's premises. It is conceded by the plaintiff that if this evidence had related to a time before the date of the writ, and within the period during which the plaintiff claimed Hoxie was frequently at the defendant's house, it would be competent and relevant as tending to support the defendant's claim in regard to the significance of his visits at her house. But it is insisted that the mere fact that the suit was pending at the time of Hoxie's exclusion deprived the evidence of the probative value it might have had if it had related to a time before the date of the writ. While it may be conceded that the bringing of the suit would have a tendency to cause the defendant to avoid actions of a compromising character and even to exclude Hoxie from her premises, the rea-

son for excluding him may have been in accordance with her theory that she had no business to transact with him, and not because she was seeking to conceal her guilt in view of the pending suit. It cannot be held as a matter of law that the evidence was not relevant. Its weight would undoubtedly be affected by the circumstance that she had been sued. The jury might find that for that reason it was entitled to little or no consideration in explanation of her intercourse with Hoxie; but it would still be logically and legally relevant as testimony proper for the consideration of the jury upon that question. It could not be excluded as irrelevant for the reason suggested. 1 Wig. Ev., s. 437. Nor are there any controling reasons of policy in the conduct of trials that require the exclusion of evidence of this character. Whether the evidence might have been excluded by the trial justice, in the exercise of a reasonable discretion, is a question not presented. So far as its admissibility depended upon his discretion, he found that justice required its submission to the jury. And as it appears in a legal sense to be relevant, and as there is no suggestion that for any other reason the law requires its exclusion, the exception to its admission must be overruled. The difficulty with the plaintiff's argument upon this point seems to be that the objection relates to the admission of the evidence by the court in the exercise of its discretion, rather than to its relevancy or competency as a matter of law. *Chamberlain* v. *Enfield*, 43 N. H. 356, 360; *Kelsea* v. *Fletcher*, 48 N. H. 282, 284; *Curtice* v. *Dixon*, 74 N. H. 386, 397.

5. Although Mrs. Sise testified that she did not have the conversation with the defendant, by telephone, which the plaintiff's evidence tended to show she did have, no error of law was committed in permitting her to testify that, upon the assumption that she did use the language imputed to her, it had no reference to the relations existing between Hoxie and the defendant. The jury might believe that she did use the language the plaintiff's witnesses testified she did, and, without other evidence of the persons referred to by such language, that she was talking about Hoxie and the defendant. It was therefore proper for her to testify that if she did use such language it did not relate to those parties. The case does not show what the alleged conversation was; but it is assumed it was somewhat indefinite in its application to particular persons.

6. One of the defendant's witnesses had been allowed to testify that he told the defendant he had heard a rumor that her house was being watched. It may be inferred that the idea intended to be conveyed by the rumor was that the plaintiff had employed a detective to ascertain whether her husband visited the defendant.

This evidence was admitted without objection, and whether it was material or not is a question that is not raised.   But after the witness had testified to this conversation with the defendant, he was asked, subject to exception, what her appearance was upon receiving this information.   The appearance of a person when informed of a matter affecting his respectability and honor may be and often is some evidence of innocence or of guilt.   The appearance of an innocent person, when first informed that he was charged with the crime of murder, might be such as he would not be expected to exhibit if he were guilty.   Different persons would appear differently under such circumstances, and no general rule can be logically formulated to determine the question in all cases.   But it is insisted that it was reversible error to allow the witness to testify that the defendant was most indignant when he told her of the rumor.   The argument is that this was equivalent to an assertion of innocence of improper relations with Hoxie and was therefore a self-serving declaration.   If she had said, "I am innocent of the charge made against me by the plaintiff," it is conceded her statement would not have been admissible, for the reason that it was a statement in her favor made in the absence of the plaintiff.   But the case does not show that she said anything in regard to her controversy with the plaintiff, or that she made any reply to the story the witness told her.   In some way, not described by the witness, she exhibited indignation on account of the rumor that her house was being watched.   That detectives are employed to watch one's movements, or to discover who are entertained in one's house, is calculated to create indignation, aside from any question of moral turpitude.   A person guilty of a crime would be apt to be as indignant at such surveillance as a person conscious of no moral defect.   Indeed, the indignation of the criminal might naturally be greater than that of the innocent person.   If the defendant, instead of showing signs of indignant surprise, had appeared to be amused by the rumor and to regard it as frivolous, could it be said that her appearance indicated a consciousness of guilt?   If innocence is the logical conclusion from her apparent indignation, guilt would be evidenced by her apparent merriment. The fact is there is no such reasonable or necessary connection between the fact proved and the inference sought to be drawn from it as to make the admission of the evidence erroneous as a self-serving declaration.   If such a logical connection were apparent, it would be necessary to consider whether one's appearance, when accused of some moral turpitude, indicating innocence might not be admissible, as well as one's appearance indicating guilt. See 1 Wig. Ev., s. 293 ; 3 *Ib.*, s. 1732 (2), (4) ; *Campbell* v. *State*, 23 Ala. 44, 79.   So far as appears, the defendant's indignation

was an immaterial circumstance which did not as a matter of law have the prejudicial effect of a declaration in her favor. If it had been accompanied with some verbal expressions on her part, its evidentiary character might have been apparent; but the mere unexplained fact that she appeared to be indignant is so equivocal and unsatisfactory as evidence upon the issue of her guilt, that it is hardly conceivable the jury could have been influenced by it to the prejudice of the plaintiff. In fact, it does not appear why the plaintiff's counsel, without very great ingenuity, might not have used it in argument as an admission of the defendant's guilt, with as much effect as the defendant's counsel could urge it as proof of her innocence. It was so inconclusive as to be of little or no use as evidence of either guilt or innocence. Verdicts ought not to be set aside for the admission of evidence which, if incompetent, it is reasonably certain did not influence the jury, as reasonable triers of the facts, in favor of the successful party.

*Exceptions overruled : judgment on the verdict.*

BINGHAM, J., doubted: the others concurred.