Hillsborough, ⎰
Oct. 1, 1935. ⎱

ANNIE K. PALMER *v.* FERDINAND B. EDGERLY & *a.*

392

*Irving E. Forbes* and *Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Langdell* orally), for the plaintiff.

*Warren, Wilson, McLaughlin & Bingham* (*Mr. Bingham* orally), for the defendant Edgerly and other owners of the building.

*Thorp & Branch* (*Mr. Thorp* orally), for the defendant Knapp.

WOODBURY, J. The bay or oriel window was not a statutory nuisance under P. L., *c.* 92, *s.* 8, for two reasons. First because it was over twelve feet above the surface of the highway, and second, because there was no evidence that it extended an unreasonable distance into the highway. Whether, aside from the statute, it was a nuisance at common law presents an issue of fact for the jury (*Bixby* v. *Thurber*, 80 N. H. 411, 413; and cases cited), which was not submitted to them and consequently has not been passed upon. The plaintiff elected to base her case upon negligence and, without objection or exception on her part, it was so submitted to the jury. It is now too late for her to raise the contention that the defendants were guilty of maintaining a nuisance. *Hawes* v. *Chase*, 84 N. H. 170, and cases cited.

On this issue of negligence we are of the opinion that there was sufficient evidence to take the case to the jury. The roof of the bay window was not supplied with gutters, and there was evidence that rain falling on the roof of the building itself was discharged therefrom onto the roof of this bay window from which it fell onto the sidewalk where, if climatic conditions were right, it would turn to ice. Furthermore, the building including the bay window was heated in the winter time. This interior heat had a tendency to cause such snow as fell upon either the roof of the building or of the

bay window to melt causing a drip onto the sidewalk. These drippings readily formed ice since the cellar of the building did not extend under the sidewalk and consequently it was unheated. This condition was of long duration and must have been obvious to both the owners and tenant of the building. Under these circumstances, the jury would be warranted in finding the owners negligent in maintaining the building as they did, and the tenant negligent in not taking steps to obviate the dangerous condition created by the defective character of the building. These facts are sufficient to warrant the jury in finding that the owners, or lessee, or both were guilty of negligence. *Bixby* v. *Thurber, supra* 416.

The defendants further contend that the undisputed facts are such that the plaintiff was guilty of contributory negligence as a matter of law. The facts upon which this contention is based are as follows: For about six months prior to her fall the plaintiff had lived on the south side of Hanover street about four blocks east of the place of the accident. Her place of employment was located west and south of that point, and daily she walked back and forth past the defendants' building, although there were several alternative routes which she might have chosen. On one occasion prior to her fall she had observed a ridge of ice running parallel with the building under the bay window where she fell, but had paid no particular attention either to the cause of the ice, or to the climatic conditions which produced it. She also knew that the sidewalk in front of the defendants' building was rarely cleared after a storm and that it was one of the worst on her route. Nevertheless, she pursued her usual course on the morning after the storm. She had no knowledge of ice under the snow or that the weather conditions had been such as to make it probable. While she did know that the walking was "treacherous" near the scene of her fall, it was as prudent for her to walk where she did on the sidewalk as elsewhere on it. The above facts are undoubtedly sufficient to warrant a finding of negligence, but are not so conclusive as to require such a finding as a matter of law.

In support of their position the defendants cite a number of cases most of which are referred to in *Robinson* v. *Railroad,* 85 N. H. 474. This line of authorities is inapplicable. In all of them the situation was such that the only inference permissible from the evidence was that the plaintiff fully comprehended the danger and negligently chose to brave it rather than to avoid it. In the case at bar the plaintiff, although she knew that the walking was "treacherous," did not have actual knowledge of the existence of the ridge of ice under the

snow, nor can it be said that, because she had seen ice there on one previous occasion, she must have known it would be there at the time of the accident, unsanded, and under the blanket of snow. Her lack of knowledge distinguishes this case from *Sevigny* v. *Company*, 81 N. H. 311, cited by the defendants. The defendants' motions for a nonsuit and for a directed verdict were properly denied.

The defendants offered in evidence photographs of other buildings in Manchester having bay windows over-hanging the street. Counsel for the plaintiff objected to this evidence on the ground that it had not been shown that these bay windows were of similar construction to that on the defendants' building, or that the sidewalks thereunder were similarly constructed or maintained, and also because it was no defence to them that others maintained a similar situation. This evidence was admitted subject to the plaintiff's exception.

Both grounds of objection stated by the plaintiff are well taken and her exception is sustained.

While it is true, as pointed out in Wigmore on Evidence, *s.* 461, that "The conduct of others *evidences* the tendency of the thing in question; and such conduct ... is receivable with other evidence showing the tendency of the thing as dangerous, defective, or the reverse," still "it is not to be taken as fixing a legal standard for the conduct required by law." To give it the effect of establishing such standard would be not only to overthrow the long established test of due care, but also to permit each business, trade or profession to establish its own rules of conduct. See *Congdon* v. *Company*, 66 Vt. 255, and *Ault* v. *Hall*, 119 Ohio St. 422, where the matter receives full consideration.

In their briefs, although it does not appear that the point was made at the trial, counsel for the defendants do not contend that the conduct of others establishes the standard by which the conduct of their clients is to be measured, but assert that the photographs were properly received as evidence on the issue of their care. Whether or not it is now too late to suggest this more limited use of their evidence is a question which does not call for answer because the photographs are inadmissible in either event.

Before the defendants' photographs could become admissible it must appear to the satisfaction of the presiding justice, first, that the bay windows therein depicted were substantially similar to that of the defendants and that the buildings upon which they were erected were of substantially similar construction and location and were, with the sidewalks adjacent thereto, similarly maintained, and second,

that a judicial investigation of these points of similarity would not lead either to a confusion of collateral issues or to an undue waste of time. Wig. Ev., s. 461. Both of these questions are addressed to the discretion of the justice presiding at the trial and, under familiar principles of law, his rulings thereon are not to be disturbed on appeal if there is evidence to support them.

The record in the instant case is fatally defective in that it is wholly lacking in evidence of similarity. There is nothing to indicate how these other windows are constructed, whether with or without gutters, whether or not rain, snow and ice are discharged onto them from the roof above, how far they overhang the street, whether or not they are exposed to storms or how the sidewalks underneath are built or what precautions are employed to keep them clear. These and many other relevant and possibly important facts were nowhere made to appear and so we are constrained to hold that it was error to have admitted the photographs in evidence.

All that appears from the record as it now stands is that there are other buildings in Manchester having bay windows overhanging the street. This does not meet the plaintiff's claim of fault. She does not complain because there was a bay window on the defendants' building, but because that bay window was defectively constructed and negligently maintained. To give the defendants' evidence any bearing on these issues it must appear how those other windows were built and what precautions were employed to obviate any dangers which might arise from that type of construction. There being no evidence of substantial similarity on these points the defendants' evidence is without relevance on the issues raised by the plaintiff.

*New trial.*

BRANCH, J., did not sit: the others concurred.

---

ON MOTION FOR REHEARING. After the foregoing opinion was filed, the defendants moved for a rehearing.

*Warren, Wilson, McLaughlin & Bingham* (by brief), for the motion.

WOODBURY, J. In support of their motion the defendants, without denying that their photographs were erroneously admitted, assert that such admission "was harmless error because the total lack of evidence of similarity was so apparent that all reasonable men must agree that it had no tendency to show that the bay window involved

was not dangerous in character, *i.e.*, the evidence erroneously admitted was so wholly lacking in evidentiary value that it is impossible for such evidence to have influenced the verdict in this case."

In support of their position the defendants cite *Brito* v. *Company*, 79 N. H. 163. In that case an expert witness was allowed to testify as to several possible causes for the starting of a machine, although there was no evidence that it did start from any one of the enumerated causes. This was held to have been error, but harmless, because "the jury were expressly instructed that a verdict for the plaintiff must be based upon the evidence and not upon conjecture." No similar warning was given to the jury in the instant case and that distinguishes it from the *Brito* case. See also *Hussey* v. *Railroad*, 82 N. H. 236, 242; *Brock* v. *Company*, 83 N. H. 290, 292. Moreover, the *Brito* case is subject to the criticism that it was left for the jury to say whether the evidence was conjectural or not. This permitted them to give it probative value if they thought it had such value, and, in analysis, submitted to them an issue which was one of law.

The distinction shown above between the *Brito* case and the one before us is not merely one of form but goes to the heart of the matter. By admitting the photographs the court gave the jury to understand that they had probative force. They were told, by implication, that they might draw inferences from them. The lack of evidence of similarity made it conjectural whether the windows in the photographs were similar to the one on the defendants' building or not. In effect, therefore, the jury were told that evidence of possibilities was good evidence. Since this false impression was in no way corrected in the charge, and since it may well have influenced the jury in arriving at their verdict, the error cannot be regarded as harmless. In this case it cannot be said that "it is reasonably certain [that it] did not influence the jury, as reasonable triers of the facts, in favor of the successful party." *Hoxie* v. *Walker*, 75 N. H. 308, 314.

The fact that the jury were correctly instructed upon the standard of care required of the defendants does not render the admission of their evidence harmless. They were not told what evidence they were or were not to consider on that issue. Although they were given the proper standard, they were permitted to use incompetent evidence in applying that standard to the defendants' conduct. This constitutes the harmful error.

*Former result affirmed.*

BRANCH, J., did not sit: the others concurred.