TRINITY & B. V. RY. CO. v. DODD. (No. 7130.)

(Court of Civil Appeals of Texas. Dallas. May 2, 1914. Rehearing Denied May 23, 1914.)

1. MASTER AND SERVANT (§ 293*)—ACTION FOR INJURY TO SERVANT—INSTRUCTIONS.

In an action for the death of an engineer caused by a switch tender failing to throw a switch, a charge that if the engineer blew the whistle to signal the switch tender, etc., and that, thereafter he received from the switch tender, or from the switch tenders, a go-ahead signal, etc., was not erroneous in not requiring the engineer to give the proper signal for the switch, since the jury could not have understood that any other than the proper signal was meant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1156, 1158–1160; Dec. Dig. § 293.*]

2. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR—INSTRUCTIONS.

Though such charge were erroneous in submitting whether both switch tenders gave the engineer the go-ahead signal, it was harmless, as there was no evidence that such go-ahead signal was insufficient for the engineer to act on.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

3. MASTER AND SERVANT (§ 289*)—ACTION FOR INJURY TO SERVANT—QUESTION FOR JURY.

In an action for the death of an engineer caused by the failure of the switch tender to throw a switch, the court properly submitted to the jury the question whether the engineer had the right to rely upon a go-ahead signal received from the switch tender.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.*]

4. APPEAL AND ERROR (§ 759*)—ASSIGNMENT OF ERROR—SUFFICIENCY.

An assignment complaining of a charge will not be considered when the charge complained of is not copied into the brief.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3094; Dec. Dig. § 759.*]

5. TRIAL (§ 260*)—REQUESTS—INSTRUCTIONS ALREADY GIVEN.

A special charge which was sufficiently covered by the court's main charge was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

6. MASTER AND SERVANT (§ 289*)—ACTIONS FOR INJURY TO SERVANT—QUESTION FOR JURY.

In an action for the death of an engineer caused by the failure of the switch tender to properly throw the switch, where there was in evidence a rule requiring the engineer to have his train "under full control" in approaching the switch, what "under full control" meant was properly submitted to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.*]

7. TRIAL (§ 194*)—ACTION FOR INJURY TO SERVANT—INSTRUCTIONS.

In an action for the death of an engineer caused by the failure of switch tenders to properly throw switches, where there was evidence that the engineer had the right to rely upon a signal received from one only of the switch tenders, a request requiring him to receive a signal from all was properly refused because upon the weight of the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

8. TRIAL (§ 260*)—REQUESTS—INSTRUCTIONS ALREADY GIVEN.

There was no error in refusing requests already sufficiently covered by other instructions.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

9. TRIAL (§ 133*)—HARMLESS ERROR—ARGUMENT OF COUNSEL.

If remarks of counsel in argument to the jury were inflammatory, they were not prejudicial, where the court withdrew them from the jury and instructed them not to consider them.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 316; Dec. Dig. § 133.*]

10. TRIAL (§ 114*)—ARGUMENT OF COUNSEL.

In a personal injury action, it was legitimate argument for counsel for plaintiff to state in his argument that he believed that $35,000 damages would be fair and reasonable.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 275–278, 296; Dec. Dig. § 114.*]

11. APPEAL AND ERROR (§ 1004*)—REVIEW—VERDICTS—AMOUNT OF RECOVERY.

A verdict will not be set aside because excessive, unless it is shown that the jury were actuated by passion, etc., or that some improper influence was exerted upon them.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3944–3947; Dec. Dig. § 1004.*]

Appeal from District Court, Freestone County; H. B. Daviss, Judge.

Action by Sadie Dodd, administratrix, against the Trinity & Brazos Valley Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Lassiter, Harrison & Rowland, of Ft. Worth, for appellant. Wolfe, Wood & Haven, of Sherman, for appellee.

RAINEY, C. J. Sadie Dodd, widow, and administratrix of the estate of Weaver Dodd, sued the appellant for damages for personal injuries to said Weaver Dodd, which resulted in his death, caused by the derailment of one of appellant's trains in which Weaver Dodd was locomotive engineer. Defendant answered by general demurrer, general denial, and specially contributory negligence, violation

of rules of the company, etc. A trial resulted in a verdict and judgment for appellee, and the railway company appeals.

## Conclusions of Fact.

Weaver Dodd at the time of his death was in the employ of appellant as engineer and was operating a locomotive from Galveston, intending to go to Tom Ball Station on appellant's road. At Virginia Point his train was derailed and he was killed. At the north end of the causeway that spans an arm of the bay, the railroads installed switches for diverging trains to their respective tracks. Preparatory to the introduction of electricity for the operation of the switches, they were being operated by switch tenders, stationed at either end. When Weaver Dodd approached said switches, traveling 15 miles an hour, he gave the necessary signals for placing or aligning the tracks. This signal was answered by Weiller, the first switchman, with a "highball," meaning "go ahead." Then Cowart, the second switchman, threw the wrong switch, leaving open the derailed track upon which Dodd ran his locomotive and wrecked the same, by which he was killed. The second switchman was negligent in the discharge of his duty, which negligence was the proximate cause of Dodd's death. Dodd did not contribute to his death by the failure to observe any necessary rules for the operation of the engine on said occasion.

## Opinion.

The eighth paragraph of the court's charge reads:

"Now, bearing in mind the foregoing instructions, you are instructed that: (1) If you believe from a preponderance of the evidence in this case that on August 22, 1912, deceased, W. L. Dodd, approached the different switches located at or near Virginia Point, Tex., and blew the whistle of his locomotive for the purpose of notifying the switch tenders of the approach of his train, and that after he gave said signal, if he did, he received from the switch tender, or from the switch tenders, a signal known as a highball, meaning a go-ahead signal, thereby indicating that his train might approach and pass and cross the switches located there with safety, and that the deceased then again blew the whistle of his locomotive for the purpose of notifying said switch tender or switch tenders that he had seen and understood the highball sign and was going to proceed across and past said switches, and he did proceed toward them for the purpose of passing same, and that, when his train approached said switches, it had the right of way over same; (2) and if you further believe that the agents, servants, and employés of the defendants, or of either of them in charge of and operating said switches, were guilty of negligence in not aligning said switches and the tracks for deceased's train; (2a) or if you further so believe from the evidence that said agents, servants, and employés of the defendants, or of either of them, in charge of and operating said switches, were guilty of negligence in wrongfully aligning said switches, if they did align same; (2b) or if you believe from the evidence that the agents, servants, and employés of the defendants, or of either of them, were guilty of negligence in giving to deceased a highball or come-ahead signal without first having the switches over which his locomotive was to proceed properly aligned so that his train could pass over same in safety; (2c) or if you believe from the evidence that the agents, servants, and employés of defendants, or of either of them, in charge of and operating said switches, were guilty of negligence after hearing the signal, if they did hear it, given by deceased, W. L. Dodd, by the blowing of the whistle of his locomotive, if he did, by which they were informed that the deceased's locomotive and train would pass over said track, in not aligning said switches so that his locomotive could pass over said switches and track in safety; (3) and if you further believe that thereby and on account of one or all of said acts, if any, of said agents, servants, and employés of defendants, or of either of them, said locomotive was caused to leave the track and turn over and thereby kill deceased; and (4) if you believe that said agents, servants, and employés of defendants, or of either of them, in so doing, were guilty of negligence, as that term has been hereinbefore defined to you, and you believe that such negligence, if any, was the proximate cause of the death of W. L. Dodd, and of the injuries and damages alleged and complained of in plaintiff's petition—you will find for plaintiff, unless you find for defendant under the instructions hereinafter given you."

[1-3] The first error urged is that it is "on the weight of the evidence in that it merely required Dodd to blow the whistle for the purpose of notifying the switch tenders of his approach, without reference to whether he blew the proper number and kind of blasts." The rules of the company specified the character of signal to be given on such an occasion, and the court was not called upon to state to the jury, as in the requested instructions, what said signal was; besides, they could not have understood that any signal other than the proper signal was intended. The second criticism is that it was error in submitting the question whether or not both switch tenders gave Dodd a highball, whereas there was no evidence that Cowart gave him any. This criticism is without merit. The undisputed testimony is that Weiller gave Dodd the highball in answer to Dodd's signals, and there was no testimony sufficient to justify the jury in finding that said highball was insufficient for Dodd to act on; therefore the charge in this particular was harmless.

The criticism urged is that it was erroneous "and on the weight of the evidence in treating all switches as a single thing and assuming that Dodd would have a right to go through all switches on a highball from the first switch tender alone, or, in other words, that Weiller's highball alone would be an assurance that Cowart's switches, as well as his own, were aligned for the Santa Fé track."

The court did not err as complained of in this particular; rule 2 being in substance that, approaching from both directions, the train should be under full control and must stop unless receiving a "highball" signal from the switch tender. The testimony shows that Dodd was authorized to rely on the "highball" of one tender, and that Weiller, the first switch tender, gave that. Cowart, the second tender, saw the highball given

by the first tender, and there is no excuse in aligning the tracks as he did. It was proper for the court to submit to the jury whether or not Dodd had the right to rely on the highball given.

There are 14 other propositions urged against paragraph 8, all of which we have considered, but do not think them well taken; therefore we will not discuss them.

[4] Assignment of error No. 2 is as follows:

"The court erred in giving to the jury the eighth paragraph of his main charge for the reasons mentioned in paragraph 111 of defendants' written objections and exceptions to the court's main charge, on file among the papers in this cause and hereby referred to and made a part hereof."

This assignment is not briefed in compliance with the rules, in that the charge complained of is not copied in the brief, nor is the substance thereof given.

[5] The fourth assignment of error complains of the refusal of the court to give special charge No. 4, which is as follows:

"If you believe from the evidence that W. L. Dodd, deceased, operated his train up to and upon the switches in charge of switch tender W. B. Cowart without having his said train under full control, then you are instructed that such act on his part (if he did the same) was a violation of causeway rule No. 2 that has been introduced in evidence; and if you further believe from the evidence that this was negligence on the part of said Dodd, and was a proximate cause of the derailment and injury, then you will find for the defendants, unless you also find that the defendants, or one of them, was guilty of some one or more of the acts of negligence charged in plaintiff's pleadings and submitted to you in the court's charge, and that such negligence of the defendants or defendant (if any you find) was a concurring proximate cause of the injury, in which latter event you will follow the rule given in the court's main charge with regard to the effect of contributory negligence."

The proposition urged is:

"Defendants were entitled to have said special charge No. 4 given in order that the jury might be specifically, positively, and affirmatively instructed that a failure by Dodd to have his engine and train under full control as he approached W. B. Cowart's switches would be a violation of causeway rule No. 2."

The special charge was sufficiently covered by the court's main charge, and the refusal did not work any injury to appellant.

[6] The court did not err in refusing requested charge No. 5 of appellant, which reads:

"You are instructed that the expression 'under full control,' as used in causeway rule No. 2 and in the charges given by the court, means that the train is to be under such control that the engineer can stop the same within the distance that he can see the track ahead of him and observe that it is clear."

Causeway rule No. 2 does not define "under full control," and for the court to have defined its meaning, as requested, would have been upon the weight of the evidence, as there was evidence raising the issue as to whether the running at 15 miles an hour would not have been "under full control."

What "under full control" meant was properly left for the jury to determine.

[7] The seventh assignment presented is that the court erred in refusing special charge No. 6, which is as follows:

"If you believe from the evidence that W. L. Dodd, deceased, operated his train up to and upon the switches in charge of W. B. Cowart without having received a proceed signal (called a highball) from said Cowart, than you are instructed that such act on Dodd's part (if he did the same) was a violation of causeway rule No. 2; and if you further believe that in so acting the said Dodd did not use such care as a person of ordinary prudence would have used under the same circumstances, and that such act of Dodd's (if he did the same) was a proximate cause of the derailment and injury, then you will find said Dodd guilty of negligence and give effect to such finding in accordance with rules furnished you in other charges given you by the court."

This charge was upon the weight of the evidence, as the evidence of John Weiller was that Dodd had the right to rely on the highball given by him. Causeway rule No. 2 says the engineer may proceed upon receiving a signal from the switch tender.

[8] The eighth assignment of error complains of the court for refusing special charge No. 7. This charge was fully covered by the main charge of the court, and there was no error in refusing said charge.

The failure of the court to give special charge No. 9 is assigned as error, viz.:

"If you believe from the evidence that W. L. Dodd, deceased, while approaching the switches at Virginia Point on the occasion in question, sounded two long blasts of the engine whistle, and that this caused switch tender W. B. Cowart reasonably to believe that the train approaching was a Southern Pacific train and to act on such belief by going over to the Southern Pacific track and aligning the switch for it, and that such mistake on the part of Dodd in the use of the whistle (if he made such mistake) was a proximate cause of the switches at the interurban crossing not being aligned for the safe passage of his train, and if such mistake (if any) on the part of said Dodd was due to a want of such care as an engineer of ordinary prudence would have exercised under the same circumstances, then you will find said Dodd guilty of negligence and give effect to such finding in accordance with rules furnished you in other charges given you by the court."

The substance of this charge was embraced in the court's main charge. Besides, we cannot see how this charge could relieve Cowart of negligence, for, if he went over to the Southern Pacific track to align that track for Dodd's train, he failed to do so, but threw the derailed track, when, if he had opened the Southern Pacific track, the injury would not have occurred. There was no error in refusing the charge.

[9] The tenth assignment relates to remarks of plaintiff's counsel in his argument to the jury, because inflammatory. If said remarks can be said to be inflammatory, the court withdrew them from the jury and instructed them not to consider same. We conclude no injury was done appellant.

[10] Appellant also complains that:

"During the closing argument in the case, Mr. James P. Haven, of counsel for plaintiff,

stated to the jury in substance, and repeatedly, that he believed a verdict for plaintiff in this case for $35,000 would be fair and reasonable, and that he thought the jury ought to give $35,-000 as damages, apportioning the same $15,000 to Mrs. Sadie Dodd and $10,000 each of the two children. As soon as said attorney finished his argument, the defendants in open court, and before the jury retired to consider of their verdict, objected and excepted to said remark or argument on the grounds that it was outside the record, improper, and prejudicial to defendants' rights, and was in effect the giving of testimony by plaintiff's attorney as to the amount of damages to be awarded without having been sworn as a witness in the case. Defendants then and there asked the court to instruct the jury that such remark was improper and outside the record and was not to be considered by them. The court overruled defendants' said objections and declined to give the jury any instructions whatever regarding said remarks, to which action of the court, as well as to the conduct of counsel, defendants excepted."

There was no error in the court overruling said objection. We do not see any error in the remarks of counsel. He was suing for damages and endeavoring to recover as large a verdict as he sued for, and it was legitimate to argue for the amount of damages the evidence shows plaintiff sustained.

[11] The next assignment complains that the verdict is excessive. There is nothing in the record to show that the injury in rendering the verdict was actuated by undue passion or prejudice, and, as the law makes them the judges of the amount to assess, their verdict will not be disturbed, unless it had been shown that some improper influence had been exerted upon them.

The evidence clearly supports the verdict; we find no error in the record; and the judgment is affirmed.