TEXAS EMPLOYERS INSURANCE
ASSOCIATION, Appellant,

v.

C. D. DILLESHAW, Appellee.

No. 14184.

Court of Civil Appeals of Texas.

Houston.

Dec. 12, 1963.

Rehearing Denied Jan. 9, 1964.

Fulbright, Crooker, Freeman, Bates & Jaworski, Jerry V. Walker, Houston, for appellant.

Jack Harrison, Alvin, Raymond L. McDermott, Mabel Grey Howell, Houston, for appellee.

COLEMAN, Justice.

This is a workmen's compensation case. The appeal is based on the refusal of the trial court to order an additional medical examination during the trial, and on alleged misconduct by appellee's counsel during jury argument.

C. D. Dilleshaw, appellee, at his counsel's request, exhibited to the jury the scars on his body resulting from burns suffered by him when he was sprayed with sulphuric acid. Thereafter Dr. Martin A. Zionts, a specialist in internal medicine, testified that on April 26, 1962, appellee came to him for treatment complaining that the burns, which he suffered on August 3, 1961, were sore, itched, and broke out in little sores. Dr. Zionts detailed his examination and diagnosis. In the interest of brevity, since the sufficiency of the evidence to support the jury verdict of total and permanent incapacity is not attacked, this testimony will not be set out other than that Dr. Zionts testified positively that on several occasions his examination of appellee revealed little cracks, blisters, and ulcerations or sores. He testified that the skin in the burned area was very tender and any sweating, heat, or rubbing of the area by appellee's belt and clothes may bring on the sores, and that the continued recurrence of the sores was probable.

After appellee rested his case, appellant called as a witness Dr. Stephen R. Lewis, a specialist in plastic surgery and head of the Department of Plastic Surgery at the University of Texas Medical Branch in Galveston. Dr. Lewis treated appellee soon after his injury and saw him from time to time until May 11, 1962, a few days more than three months before trial. He testified that he had never noticed any sores or excoriation or cracking of the skin on any of his examinations since appellee was released from the hospital, and that there was no medical reason why there should be sores or ulcerations within the area of appellee's burns unless new injuries occurred. He stated that there was no basically disturbed circulatory change in any of his burns with the exception of the area of the skin grafts on the ankle and right arm. That aside from another full second degree burn sunlight would not cause exterior breakdown of the tissue, and that he should not be any more susceptible to perspiration causing cracking or sores in the burned areas than in any other area of his body. He testified that appellee had recovered very well from his burns, which were well healed, and should be able to withstand normal injury as well as other areas of his body.

Before Dr. Lewis was excused, the following colloquy occurred between counsel for appellant and the Court:

Mr. Walker: "If it please the Court, before I ask the doctor his final opinion, I would like to ask that he have permission to look at Mr. Dilleshaw's areas where he has reported sores and ulcerations and see if the doctor can detect any evidence of such."

The Court: "That is a matter you will take up with Counsel. Go ahead with your examination."

The next question was:

Q. "Assuming that they agree to that, would you be willing to do that, look

at his burned areas to see if you find any evidence of sores or ulcerations?"

A. "Yes, sir, certainly."

Further testimony was taken covering some 176 pages of the statement of facts, but the matter does not appear to have been called to the attention of the court on any other occasion. The record does not. reflect that appellee, or his attorney, was asked to permit a further examination, or that no further examination was in fact had.

We question whether the trial court made a final ruling which might be the ground for a point of error; in any event, no reversible error is shown. Justice Calvert, in his dissenting opinion in Texas Employers' Insurance Association v. Hatton, 152 Tex. 199, 255 S.W.2d 848, said: "The only right that the insurer can acquire from a mere exhibition of the injured member in the courtroom is to have another exhibition of it for its benefit." This appears to be what appellant desired, but no harm resulted from the denial of this right since nothing in the record suggests that at the time the request was made such sores were apparent on appellee's body or that they were present when the burned areas were exhibited to the jury. Appellant's medical witness had examined appellee on numerous occasions and testified fully concerning the alleged sores. It is not apparent how an examination at this point would have given the doctor any additional information concerning the disputed question. The following day appellee was recalled to the stand and exhibited irritated spots on the burned area of his skin which he testified had appeared the preceding evening. Since appellant did not renew his request for an examination, it was not incumbent on the court to order an examination at that time. The fact that the doctor was not permitted to see appellee's burned areas on request was not a probable cause of the rendition of an improper judgment. Rule 434, Vernon's Annotated Texas Rules.

Finally, appellant urges that the trial court erred in refusing to grant a new trial because of the improper, inflammatory and prejudicial jury argument by counsel for appellee. Appellee contends that this point was not properly preserved in the motion for new trial since appellant is relying on the cumulative effect of various objectionable arguments, and no assignment to this effect appears in the motion for new trial. In Assignment No. VII of his motion for new trial, appellant set out the substance of certain jury argument made by the attorney for appellee and then stated: " * * * all of these remarks were and the argument as a whole was so highly improper, prejudicial, and inflammatory in nature that it could not be cured by instruction of the Court * * *." Appellant has pointed out certain argument as being erroneous and has complained of the argument "as a whole". By this assignment appellant properly directed the attention of the trial court not only to the specific argument claimed to be improper, but also to the cumulative effect of the argument. Rule 434, Texas Rules of Civil Procedure. The assignment of error, however, did not specifically call to the attention of the trial court the argument constituting improper criticism of counsel.

The most serious question presented by this point results from this argument made by counsel for appellee:

"Charles Dilleshaw comes to you as a man that deserves your consideration, that deserves your help * * *.

"He has been truthful, he was a good worker and even after he got these serious injuries he kept on trying and he will keep on trying, but in fairness to him, you ought to say, 'Charles, we are going to try to help you get that business and off your feet and out of that hot broiling sun, and the only way we know to do it,' and I will show you how. Number 1, 'We do,' we say total disability. Number 2, we find

this commenced August 3, 1961, when acid got all over his body. Number 3, we find the duration of it to be permanent, p–e–r–m–a–n–e–n–t. We find the duration to be permanent. Number 4, is he partially disabled. Let me pause there a moment please. A lot of times the jury would say yes, partially disabled, too, and put the answer, 'We do.' But if you will read—

MR. WALKER: "We object to the line of argument on Mc. McDermott's part, he has gone outside the bounds the Court imposes on us, and is advising the Jury of the effect of their answers, and I would like to move for a mistrial."

THE COURT: "Overruled."

MR. McDERMOTT: "You are about to write your verdict and he would like a mistrial, throw them out, and he wants to get rid of this Jury, Mr. McDermott said something a little prejudicial. That is what a mistrial means, Ladies and Gentlemen, I don't want a mistrial, I know you are going to render a fair verdict, but apparently my opponent does. * * *"

Almost immediately thereafter this argument was made: "So, Ladies and Gentlemen, if you write the only verdict that can help this man and get him off his feet and off the job and out of the hot boiling sun you will answer 'We do not.'"

In making this argument counsel was clearly informing the jury of the legal effect of the answers to the special issues submitted to them. Such argument has been uniformly condemned by our courts as being improper. Robinson v. Lovell, Tex.Civ.App., 238 S.W.2d 294, ref., n. r. e.; Hurley v. McMillan, Tex.Civ.App., 268 S.W.2d 229, ref., n. r. e.

In Texas & N. O. R. Co. v. McGinnis, 130 Tex. 338, 109 S.W.2d 160, opinion adopted, the Court said:

"Complaint is made of that part of the argument of counsel for the plaintiff in which he begged the jury to answer certain of the issues yes and certain of them no, the point being made that such conduct in effect apprised the jury of the legal effect of the answers. It does not appear that counsel told the jury that the answers for which he begged would result in a judgment for his client. Reasonable latitude must be allowed counsel in arguing a case submitted on special issues. If, as has been correctly said, he may advise the jury how in his opinion, from the evidence, the issues should be answered and may specifically say that certain issues should be answered yes and certain issues no [Dallas Ry. & Terminal Co. v. Bankston (Tex.Com.App.) 51 S.W.(2d) 304, 310], he may also earnestly urge or beg the jury to answer certain issues yes and others no, provided the argument is not so made as to inform the jury of the effect the answers will have upon the judgment to be rendered or as to cause the jury first to agree upon the result desired to be accomplished and then designedly make the answers so as to accomplish such result."

It appears that the argument made here is exactly the sort of argument condemned by the Supreme Court. Counsel, in an appeal to the sympathy of the jury, urged it to help appellee to get a business and get off his feet and out of the hot sun, thus in effect urging the jury to agree upon the result desired to be accomplished and then designedly make the answers so as to accomplish such result. Leaving nothing to chance, counsel then suggested to the jury the exact answers necessary to accomplish this result.

The action of the trial court in overruling the objection and the motion for mistrial was error. In Robinson v. Lovell, supra, it was held an abuse of the court's discretion to permit counsel to make a statement to the jury of the legal consequences of any of the jury's findings.

In Ex parte Fisher, 146 Tex. 328, 206 S.W.2d 1000, the Court said:

> "It is obvious that the relator was attempting to inform, and did inform, the jury what the law is with reference to the rights of his client, which was calculated to inform them of the legal effect and result of their answers to the issues submitted. That such conduct and practice is to be condemned under our law of submitting cases upon special issues cannot be doubted, unless unlike the circumstances in the court below, the issues are such that men of ordinary intelligence would be presumed to know the legal effect of their answers. Galveston, H. & S. A. Ry. Co. v. Harling, Tex.Com.App., 260 S. W. 1016; McFaddin v. Hebert, 118 Tex. 314, 15 S.W.2d 213; City of Dallas v. Firestone Tire & Rubber Co., Tex.Civ.App., 66 S.W.2d 729, writ refused. As was said in the McFaddin case, supra [118 Tex. 314, 15 S.W.2d 216], 'the prime object, purpose, and intent of the law for submitting cases on special issues is to remove the jury from any bias in favor of, or prejudice against, either party to the suit, to relieve them from the duty of directly passing on who shall prevail in the suit, and to make it the duty of the jury to answer each question truly as they find the facts to be from the evidence, without regard to what the result of their answers may be.' "

In this case issues were submitted on total and partial incapacity, duration of each, and the effect of prior injuries on the incapacity of appellee. We are not prepared to say that men of ordinary intelligence would have known the effect of the answers to such issues in the absence of such argument.

█ In determining whether the erroneous argument was calculated to cause and probably did cause the rendition of an improper verdict, we must consider the entire argument and the record. Prior to making the argument objected to, the attorney for appellee said: "I want you to consider one other thing before we go into these issues. Charles Dilleshaw comes to you as a man that deserves your consideration, that deserves your help."

Immediately after the motion for mistrial was overruled, he criticized appellant's counsel for making the motion. Later in the argument appellant's counsel was criticized for objecting to certain evidence in these words:

> "You saw yourself the little ulcer from working in the hot sun when that skin flares up and cracks up. Jerry said you weren't doctors and couldn't look at this ulcer. I tell you twelve jurors can look at this just as well as a doctor and he tried to stop it. Jerry Walker tried to stop you from seeing the place on this man's skin just as they tried to keep you from seeing what sulphuric acid would do. He said sulphuric acid was certainly dangerous and powerful. But do you remember how long Jerry Walker fought with me to keep you from seeing it with your own eyes? Why? Because he didn't want you to know the full effects of the terrible destructive power of sulphuric acid and he didn't trust you with that knowledge. No more than he trusted you with the knowledge of seeing Mr. Dilleshaw's bare skin with your own eyes, he didn't want you to see that. Jerry's closing remarks to you indicated that this lawyer isn't being fair with you. He told you and I wrote it down just as he said it. 'I have confidence in this Jury, I am perfectly willing for you to decide our rights.' That from the lips of a man who less than forty-five minutes to an hour ago made a motion to declare a mistrial and put this Jury out of the box and pass this case over. That is what a mistrial is, throw the Jury out of the box, we don't trust them. If a man is being honest with you, why would he ask for a mistrial

to get rid of this Jury? Is he perfectly willing for you to decide the rights of Charles Dilleshaw and Texas Employers Insurance Association? No.

"* * * I have been accused of things by Jerry, and I want to show you the things he did. How he tried to keep you from seeing Mr. Dilleshaw's body and what the acid would do and how he wanted to throw the Jury out of the box and have a mistrial. That shows a man representing a client who knows the day of judgment is at hand and indicates the verdict this Jury is going to write. * * *"

Appellee's attorney also made the following argument:

"I ask you to stay in there as much as is necessary in order to write the verdict or no verdict at all. Because anything else would be a miscarriage of justice in this case. I mean it. Hang the Jury high, if necessary. If you hang up and you can't go along with what the rest feel should be the verdict in this case, and you will be discharged and we will retry this case."

MR. WALKER: "I object, he is going outside the record in this case."

THE COURT: "Sustained."

While the trial court sustained the objection to the argument that in the event of a hung jury, appellee could get another trial, appellee's attorney immediately stated that he would rather retry the case, and then added: "* * * because he is entitled to this * * *", also improper argument.

No other objection was made to these arguments, but appellant urges that the prejudicial effect of the argument was so great that it could not have been removed from the minds of the jury by an instruction from the court. We agree with the reasoning and analysis of Justice Calvert as expressed in his dissenting opinion in Southern Pacific Company v. Hubbard, 156 Tex. 525, 297 S.W.2d 120, in which

he was joined by Justices Griffin and Walker, in these words:

"But assuming that all of the argument here referred to may be properly labeled as improper and prejudicial, the real question with respect thereto is whether a reversal should be ordered in the absence of timely objection. In arriving at an answer to this question we must assume that all means would have been availed of to eliminate any possible prejudice arising out of the argument; we must assume that if proper objection had been made, counsel for respondent would have apologized for the argument and would have withdrawn it, and that the trial judge would have instructed the jury not to consider it for any purpose and would have reprimanded counsel for respondent for having made it. Considered in this light, it is my opinion, judged on the basis of the majority of the more recent decisions of this Court, that the vice in the argument could have been cured and that a reversal should not be ordered."

While we would not reverse this case because of the improper argument to which no objection was made for the reasons stated by Justice Calvert, yet we note that an objection was made to improper argument in this case and no "prompt and devastating rebuke" followed. In this argument the attorney for appellee combined an appeal for sympathy and help with the attack on the attorney for appellant, obviously made for the sole purpose of prejudicing the jury against appellant, and then told the jury how to answer the issues to most effectively help appellee. Under such circumstances the cumulative effect of the argument may be considered in assessing the probability of injury. Southern Pacific Company v. Hubbard, supra; United States Fidelity & Guaranty Co. v. Lewis, Tex.Civ. App., 266 S.W.2d 194.

█. Under the facts of this case the extent and duration of disability were seri-

ous questions of fact by reason of the medical testimony produced and the earnings of appellee after the injury. It is our view that the improper argument of appellee's counsel, informing the jury of the effect of their answers, was calculated to cause and probably did cause the rendition of an improper judgment.

The judgment of the trial court is reversed and the case is remanded for a new trial.