**W. A. BROWN, d/b/a Brown Trucking Company, Appellant,**

v.

**Joe F. POFF, Appellee.**

No. 5670.

Court of Civil Appeals of Texas.

El Paso.

Jan. 27, 1965.

Rehearing Denied Feb. 24, 1965.

Brown, Day & Craig, Fort Worth, H. O. Metcalfe, Marfa, for appellant.

Warren Burnett and Robert D. Pue, Odessa, for appellee.

CLAYTON, Justice.

Suit for personal injuries growing out of a truck-car collision, filed by plaintiff-appellee against defendant-appellant. In answer to special issues the jury found in favor of plaintiff in the amount of $115,000.00. From a judgment on this verdict, appellant perfects this appeal.

Appellant's first point on appeal maintains that the trial court erred in overruling appellant's motion to discharge the jury panel because of an allegedly improper and prejudicial injection of liability insurance before the panel by appellee's counsel. Our attention is called to the following questions directed to two of the members of the jury panel on voir dire examina-

tion of the panel, and the answers given to such questions:

"Q Mr. Milam, what is your occupation?

"A (BY PANEL MEMBER JACK MILAM:) Insurance business.

"Q You write general casualty insurance?

"A Yes, sir.

"Q Could you make a fair juror in this case?

"A I seriously doubt it.

"Q Inasmuch as you know both sides are entitled to a fair trial, do you doubt your ability to be fair in this kind of case?

"A No, sir; I could be fair. Of course, I am in the insurance business now.

"Q You say you seriously doubt it.

"A I know Joe Poff, and John Menefee, I have had—he has been my lawyer. I know Poff in the insurance business. To be frank, he is my customer and the other fellow is my lawyer.

"Q You are the only one that knows.

"A I doubt it.

"Q You doubt that you could be fair in this kind of case?

"A Yes, sir.

"Q In view of the fact that he has been very candid with us, I think we can excuse him since we have more than 24.

"THE COURT: If you have a serious doubt, we will excuse you, Mr. Milam.

"A Thank you. (Thereupon, Mr. Milam was excused.)

"Q Mrs. Workman.

"A (BY PANEL MEMBER MRS. WORKMAN:) I am a housewife and an inactive partner in an insurance agency.

"Q Would that fact influence you in such a case as this, your connection with an insurance agency?

"A I don't feel it would. I haven't been active in the agency for almost ten years.

"Q You could give both sides a fair trial?

"A I feel I can."

Appellant's complaint is that the foregoing exchange between appellee's counsel and the two jurors could not fail but impress the members of the panel that liability insurance was directly involved in the case. In support of this position appellant cited authorities to show that such would be reversible error. We believe these authorities to be distinguishable from the case at hand. In the case of Herrin Transp. Co. v. Peterson, 216 S.W.2d 245 (Tex.Civ. App., 1948; ref.), the court stated, at page 248:

"From an exhaustive analysis of the authorities involving the question above presented, we are of the opinion that only where counsel has deliberately done something to bring insurance into the picture or where the inference is plain and unmistaken that the defendant is protected by liability insurance that a reversal will be ordered."

In the instant case we find no objectionable motive in the questions propounded to the jurors. As late as 1964 a Court of Civil Appeals, in the case of Tripp v. Bloodworth, 374 S.W.2d 713, at page 717, said:

"* * * Under these circumstances, we believe that the trial court could properly find, and we must assume that the court did find, that the injection of insurance into the case

was inadvertent and not intentionally designed to inform the jury that the appellant, the defendant in this case, had indemnity insurance. There was no showing that the jury discussed insurance and in our opinion the record does not show that an improper judgment probably resulted.

"Every mention of insurance in a damage suit does not constitute reversible error. On the contrary, the complaining party has the burden of showing that the injection of insurance into the case probably caused rendition of an improper judgment. Rules 434, 503, T.R.C.P. Dennis v. Hulse, (Sup. Ct.), 362 S.W.2d 308; Walker v. Texas Employers' Insurance Association, 155 Tex. 617, 291 S.W.2d 298; Herrin Transportation Company v. Peterson, Tex.Civ.App., 216 S.W.2d 245, (Writ Ref.)."

In the case before us the appellant does not claim in this point of error, and we do not find, that an improper judgment probably resulted from the above-quoted exchange between counsel and members of the jury panel. Point of Error No. One is overruled.

▋ By Points Two and Three appellant objects to questions of appellee's counsel to the jury panel on voir dire, in which appellant claims a pledge or agreement from the panel to return a verdict for $115,000.00 was sought; and that in argument to the jury appellee's counsel again stressed the amount of $115,000.00 and indicated that the panel had committed itself to that amount. The gist of the question propounded to the panel was: "If under all the evidence when it is in, the greater weight and greater degree of believable evidence shows he is entitled to the $115,000.00," (for which amount suit was brought) "is there any reason why anyone of you could not and would not be able to write such a verdict?" In final argument appellee's counsel told the jury:

"Now, if we are right, the figure for which we have sued is fair, it is just, and it is reasonable. You members of the jury told me if after all the evidence was in and a preponderance of the evidence justified it, there was no reason why you neither would not or could not be able to write a verdict for $115,000.00, and I took you at your word."

" * * * I believed you then yesterday as I believe you now, and my client has a right to believe you now as he believed you then."

At other points in his argument appellee's counsel stressed the $115,000.00 figure.

We have examined the cases cited by appellant in support of these contentions and here again find them to be distinguishable from the present case. Questions and argument of somewhat similar import were held not to be reversible error in Trinity & B. V. Ry. Co. v. Dodd, 167 S.W. 238 (Tex.Civ.App., 1914; ref.), and Dodd v. Burkett, 160 S.W.2d 1016 (Tex.Civ.App., 1942; ref. w. m.). See also Texas and New Orleans Railroad Company v. Flowers, 336 S.W.2d 907 (Tex.Civ.App., 1960, n. w. h.). Points Two and Three are overruled.

In appellant's fourth point complaint is made that the trial court failed to submit to the jury the ultimate disputed fact issue of whether or not the appellee had sustained any injury on the occasion in question, and had overruled appellant's objections to the submission of Special Issue No. 5. Special Issue No. 5, as submitted to the jury, reads as follows:

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate the plaintiff, Joe F. Poff, for the damages, if any, sustained by him as a direct and proximate result of the negligence, if any, of the defendant's truck driver on the occasion in question?

"Answer in dollars and cents or 'none' as you may find from a preponderance of the evidence."

The jury answered "$115,000.00".

The issue was accompanied by an instruction on the elements of damages.

 Among other objections to this issue, appellant made the following objection:

"Defendant objects and excepts to the submission of Special Issue Number 5 because such issue assumes that the plaintiff did actually sustain some personal injury on the occasion in question, this being a disputed fact issue by pleading and by testimony before the court; and it would be highly improper to submit such Special Issue Number 5, except conditioned upon the jury having found that the plaintiff did sustain some personal injury on the occasion in question."

In Texas & Pacific Railway Company v. Van Zandt, 159 Tex. 178, 317 S.W.2d 528, the Supreme Court had before it under similar circumstances the following charge:

" 'Special Issue No. 5

" 'What sum of money, if paid now in cash do you find from a preponderance of the evidence, would fairly and reasonably compensate the Plaintiff, R. A. Van Zandt, for the injuries, if any, received by him proximately resulting from the collision in question?

" 'Answer in dollars and cents or "none", as the case may be.

" 'Answer: $27,000.00.' "

In that case the defendant-petitioner prepared and requested the submission of a special issue inquiring whether respondent had suffered the injuries alleged by him and objected to the charge of the court because of failure to submit the issue. The court held:

"The burden was on respondent to prove that he had been injured. That question was therefore put in issue by petitioner's general denial. We are satisfied that it was also put in issue by petitioner's evidence, which need not be detailed. Inasmuch as no separate issue on the fact of injury was submitted, the judgment in respondent's favor may not stand unless the question was fairly and adequately submitted in Special Issue No. 5, quoted above.

"Special Issue No. 5 is the conventional type of damages issue. Its purpose is not to establish liability. Its purpose is to fix the amount of money damages which will fairly compensate an injured party for his injuries and thus discharge the legal liability of a defendant. Whether there is any legal liability on the part of a defendant to pay the money damages must be determined, when the evidence is conflicting, through the submission of separate issues.

"In a large percentage of personal injury cases—perhaps in a majority—there is no question but that injuries were sustained. In such cases, the conventional issue on damages and accompanying instruction permits the jury in arriving at the amount of damages to be awarded to make an incidental determination of the nature and extent of the injuries suffered. But when the existence of injury is controverted in the evidence, it is not a sufficient submission of that ultimate and vital fact issue, over proper objection, to inquire whether a particular negligent act or omission was a proximate cause of plaintiff's injuries, if any, or what amount of money will compensate the plaintiff for the injuries, if any, sustained by him as a proximate result of the defendant's negligence, if any. In such cases a special issue directly and unequivocally inquiring whether in-

jury was sustained should be submitted." * * *

"The trial court erred in refusing to submit an issue inquiring whether respondent sustained personal injuries on the occasion in question. Moreover, it is our opinion that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment and thus requires a reversal of the judgment under Rules 434 and 503, Texas Rules of Civil Procedure. We cannot permit a judgment to stand when a defendant is denied the right to a separate submission of a *vital defensive issue*. Special Issue No. 5 did not afford the jury an opportunity to answer either that respondent was or was not injured on the occasion in question. Under the court's instruction it could answer the issue only 'in dollars and cents or "none."' If the jury had been afforded an opportunity to do so and had answered that respondent suffered no injuries, the answer to Special Issue No. 5 would have been immaterial. Garza v. San Antonio Transit Co., Tex.Civ.App., 180 S.W.2d 1006, 1009, writ refused, want of merit." (Emphasis supplied.)

The circumstances of the Van Zandt case and the instant case are nearly identical, except that in the Van Zandt case the defendant-petitioner had prepared and requested the submission of a special issue inquiring as to injuries, in accordance with Rule 279, Texas Rules of Civil Procedure, while in the present case the appellant did not, even though the Supreme Court had held that under the circumstances this was a vital *defensive* issue. We consider ourselves to be bound by this language in the Van Zandt case. If such be the law, we believe that the submission of such an issue was waived by the defendant and that the trial court was justified in overruling appellant's objection to the charge in this respect. Appellant's Points numbers Four and Five are overruled.

By Point number Six appellant complains that the jury's verdict awarding appellee damages in the amount of $115,000.-00 was excessive and so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust, showed bias and prejudice, was supported by insufficient evidence, and required either a reversal or a remittitur. In Point Seven it is asserted that the court erred in submitting the element of future pain and suffering in Special Issue No. 5 over his objections. (The court's charge used the expression future "mental anguish and physical pain".) We feel that Point Six must be overruled. The amount of damages to be assessed in a personal injury case is ordinarily for the jury, and before an appellate court is warranted in interfering it should be manifest that the jury was inflamed by passion, prejudice, sympathy or some other improper motive. The amount of the verdict without other proof does not establish bias or prejudice on the part of the jury. El Paso City Lines v. Harris, 233 S.W.2d 620 (Tex. Civ.App., 1950; n.w.h.). "To bring a case within the rule prejudice or passion must be affirmatively shown; excessiveness of the verdict in itself does not establish it, unless it is so flagrantly excessive that it cannot be accounted for on any other ground * * *", World Oil Co. v. Hicks, 129 Tex. 297, 103 S.W.2d 962 (Com.App., adopted opinion, 1937). See also Gulf, Colorado & Santa Fe Railway Company v. De Leon, 373 S.W.2d 886 (Tex.Civ.App., 1953; ref., n. r. e.). No showing is here made of any bias or prejudice, nor do we find that the verdict was in disregard of the evidence or so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

With reference to the seventh point of error dealing with future pain and suffering, there is testimony in the record to indicate that appellee had suffered a brain injury or injury to the central nervous system in the collision and that his symptoms had persisted for some time after the accident, and "the longer a neurological deficit

persists, the lower the probability of spontaneous correction". Among the symptoms were dizziness and instability, for which there was no known "specific treatment". We cannot say that this condition does not involve future "mental anguish and physical pain", nor are we able to tell to what extent this element of damage was given consideration in the over-all finding of damages by the jury. We feel that Point No. Seven must be overruled.

■ The remaining points of error, Nos. Eight through Thirteen, all relate to the argument to the jury of appellee's counsel. In the eighth point our attention is directed to that part of the argument in which appellee's counsel stated to the jury: "We are dealing with a man's whole life. We are dealing with the entire hope of a family * * * when the whole hope of a family is at stake * * * when the whole future of a family is at stake * * *." At that point objection was made that the reference to "the whole future of a family" was improper and inflammatory argument, and should be stricken. · Appellee's attorney withdrew the remark and moved that the jury be instructed not to consider it, and the court then instructed the jury that they "would give no credence to and pay no attention and use for no purpose in your deliberations the statement made by counsel as to the whole future of a family being at stake".

Without burdening this record by repeating here the various other arguments of appellee's counsel objected to by the counsel for appellant, let it be said simply that the trial court seems to have sustained objections and issued instructions in most instances where objection was raised. We might add that at one point appellee's counsel told the jury: "* * * if I ever have seen a case where the jury could sit right in the box where you are now, after having heard the evidence and kind of argument these gentlemen put up, and write in there $115,000.00 * * *"; whereupon the objection was made that comparing this case to other cases counsel had seen was outside the record. This objection was overruled and exception taken. No attempt was made by appellee's counsel to particularize as to other cases he had seen or to compare them or their merits with the instant case, and while the language used may constitute some breach of propriety, we do not view it as reversible error.

■ Mention should perhaps be made of two other points of error. Number Twelve asserts that the cumulative effect of each instance of improper argument by appellee's counsel was so prejudicial that the trial court should have granted appellant's motion at the close of all argument. We feel it appropriate here to quote from and apply to the record at hand, the language employed by the Supreme Court in King v. Federal Underwriters Exchange, 144 Tex. 531, 191 S.W.2d 855, 857:

> "The Court of Civil Appeals was of the opinion that while it might be held that no one of the arguments complained of, standing alone, would constitute reversible error, yet all of them combined were so harmful as to require a reversal. We recognize that there may be circumstances where counsel so persistently and continuously oversteps the bounds of proper argument as to require reversal even though a single breach followed by proper instruction of the court would not have that effect. The accumulation of minor breaches might have the effect of creating an improper prejudice against the opposing party, even though no one of them standing alone would have that effect. Smerke v. Office Equipment Co., 138 Tex. 236, 158 S.W.2d 302. However, in our opinion, this record does not prevent such an accumulation of breaches of the rules of argument as to require a reversal under the rule above referred to."

We feel that such is true here, and that the circumstances presented to us do not require a reversal under this point of error.

Appellant's thirteenth (and last) point of error maintains that appellee, in his closing portion of argument, informed the jury of the effect of their answers to special issues. Two excerpts from this argument are emphasized:

"* * * and answer the first four issues 'yes', and the rest of them 'no' ";

and

"* * * Remember, from six on down are just as important as the first four, and should be answered, under the evidence 'no'; and 'it was not an unavoidable accident'; and the first four questions should be answered 'yes' ".

The Commission of Appeals, in an adopted opinion in Texas & N. O. R. Co. v. McGinnis, 130 Tex. 338, 109 S.W.2d 160, 164, has this to say:

"Complaint is made of that part of the argument of counsel for the plaintiff in which he begged the jury to answer certain of the issues yes and certain of them no, the point being made that such conduct in effect apprised the jury of the legal effect of the answers. It does not appear that counsel told the jury that the answers for which he begged would result in a judgment for his client. Reasonable latitude must be allowed counsel in arguing a case submitted on special issues. If, as has been correctly said, he may advise the jury how in his opinion, from the evidence, the issues should be answered and may specifically say that certain issues should be answered yes and certain issues no [Dallas Ry. & Terminal Co. v. Bankston (Tex.Com. App.) 51 S.W.(2d) 304, 310], he may also earnestly urge or beg the jury to answer certain issues yes and others no, provided the argument is not so made as to inform the jury of the effect the answers will have upon the judgment to be rendered or as to cause the jury first to agree upon the result desired to be accomplished and then designedly make the answers so as to accomplish such result."

See also Missouri Pacific Railroad Company v. Goodson, 345 S.W.2d 569 (Tex.Civ.App., 1961; ref., n. r. e.) (which also included an argument on the unavoidable accident issue), and Texas Employers Insurance Ass'n v. Dilleshaw, 373 S.W.2d 856 (Tex. Civ.App., 1964; ref., n. r. e.). This point of error must also be overruled.

All points of error having been considered, they are hereby overruled, and since no reversible error is found in this record, the judgment of the trial court is affirmed.

PRESLAR, J., not participating.