**TEXAS EMPLOYERS' INS. ASS'N
v. KING.
No. 15290.**

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 23, 1951.

Rehearing Denied Dec. 21, 1951.

Nelson, Montgomery & Robertson, of Wichita Falls, for appellant.

Kearby Peery, of Wichita Falls, for appellee.

HALL, Chief Justice.

Appellant, Texas Employers' Insurance Association, submits this appeal from a judgment of the district court of Archer County in favor of appellee, Odis Ray King, awarding him $550 for accrued compensation and further compensation at the rate of $25 per week for 356 weeks.

Appellant contends in its two points that the trial court erred in granting judgment to appellee for total loss and permanent use of his left arm because (1) there was no evidence of probative force, and (2) the evidence was insufficient to sustain such finding.

The evidence is undisputed that appellee, Odis Ray King, was accidentally injured on May 19, 1950 while in the course of his employment with Bridwell Oil Company; that he fell from an oil derrick, severely injuring both arms; that his right arm was totally and permanently injured so far as the use thereof was concerned, in accordance with the definition set out in the workmen's compensation law.

Appellant moved the trial court to disregard the jury's answer to special issues propounded to it, wherein it found appellee sustained total and permanent loss of the use of his left arm. Appellant's contention is that appellee's left arm was injured but "that the loss of use thereof did not prevent the plaintiff from using said arm in some occupation for which he was qualified, then under the very terms of the statute he had not lost the total permanent use of said arm. * * *"

In reviewing the evidence most favorable to the trial court's judgment, we note it contains testimony from both medical and lay witnesses, substantially as follows: Appellee was thrown from an oil derrick when a wench line broke and he landed on both of his elbows; the only work which he was trained to do was that of manual labor. Dr. Parnell testified in substance that the x-rays showed a fracture in the head of the radius of the left arm and that the injury caused damage to the soft tissues of the joint; that the injury irritated the nerves. Some of his testimony is:

"He still has some limitation. I think that arm is going to make a little more improvement. I believe that it will make a slight amount of improvement yet. He can't do the things like you told me, like digging with a pick and shovel or lifting with it, but he can do some things. He can fix his tie and he can do lots of things. He can drive a car but he can't do hard manual labor. He can't lift a forty or fifty pound slip with that arm. He can't use a sledge hammer with it. He can't use a pick or shovel with it. He cannot use that left arm to do heavy manual labor because he has too much damage in the joint. * * * When he attempts to lift anything, even a slight weight, with the arm stretched out like this, he feels pain. That is a natural reaction to that type of injury. It irritates the nerves running over that rough area. I don't think he will ever be able to use that left arm to do what we might term manual labor, such as roughnecking or lifting. He is finished on that. * * * There is labor he can do using his left arm, such as driving a car * * *.

"Q. Doctor, assuming that this man's right arm was perfect, would you pass this man for work of an ordinary laboring man on his left arm at the present time? A. No, sir, I wouldn't. I don't know of any working job a man can get by on doing nothing more than lifting a weight that doesn't weigh over five pounds. I have never found any—that would be pretty hard to find. As to whether he could do a job involving driving an automobile—but I doubt if he can drive it all day * * *."

The testimony of Dr. Jack Maxfield, who treated appellee for the Insurance Company, pertaining to the injury of appellee's left arm, is:

"Q. What is causing the limitation of motion in the left arm? A. That is what is called an ossifying hematoma. There is an extra bony and calcium deposit in the soft tissue in front of that elbow. That is the type of bone that has been laid down in an area of blood that pooled there following the injury. It is a complication of elbow injuries which represents a special problem. We have to let that new bone

entirely alone for a number of months, and at the end of many many months it begins to absorb that extra bone and some motion is restored. At times we do an operative procedure after many months to improve the range of motion, but that is what causes his limitation.

"Q. Now, sometimes that ossification will not be absorbed and you have to do surgery? A. Yes.

"Q. That means you go into the joint and remove the obstruction? A. Yes.

"Q. Whenever you do that, there is a possibility of infection setting up? A. A remote possibility, yes.

"Q. And it is very technical not to injure those very small nerves in the elbow, isn't that right. A. It is technically a difficult operation, yes * * *."

From such testimony above quoted, the jury was within its province, while finding appellee had permanently lost the total use of his left arm, due to the injury in question.

Appellee's counterpoint two is: "The Court erred in failing and refusing to grant the plaintiff a lump sum judgment in this cause."

It has been many times held that it is a question of fact whether an award should be paid in a lump sum in certain cases, as provided for in Article 8306, sec. 15, R.C.S. See Ocean Accident and Guarantee Corporation v. McCall, Tex.Com. App., 45 S.W.2d 178, on other questions see Tex.Com.App., 46 S.W.2d 290.

We note that appellee did not request a finding by the trier of facts upon the pertinent question of whether he would suffer a manifest hardship, and injustice would otherwise result, in event he was not paid in a lump sum. Since appellee failed to request such independent issue to be submitted in whole or in part, he waived his rights thereunder and the court had no authority to render judgment thereon for him. See Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.2d 1084; Bulin v. Smith, Tex. Com.App., 1 S.W.2d 591; Casualty Reciprocal Exchange v. Stephens, Tex.Com.

App., 45 S.W.2d 143. We express no opinion as to whether appellee would be entitled to a lump sum settlement if such issue had been submitted to a jury.

Judgment of the trial court is affirmed.