**R. E. DUMAS MILNER CHEVROLET COMPANY et al., Appellants,**

v.

**Oscar L. MORPHIS, Appellee.**

**No. 16103.**

Court of Civil Appeals of Texas.

Fort Worth.

May 6, 1960.

Rehearing Denied June 17, 1960.

Brewster, Pannell, Leeton & Dean and Beale Dean, Fort Worth, for appellants.

Brown, Herman, Scott & Young and Ardell M. Young, Fort Worth, for appellee.

BOYD, Justice.

This is a suit against R. E. Dumas Milner Chevrolet Company and Marion Browning for damages for personal injuries sustained by Dr. Oscar L. Morphis, his minor son Stephen A. Morphis, and his minor nephew David Laird, when on August 29, 1957, an automobile owned and driven by Dr. Morphis collided with an automobile owned by the Chevrolet Company and driven by its employee Marion Browning. There was also a claim for damages to the Morphis automobile. International Service Insurance Company, which carried and paid collision insurance on the Morphis automobile, intervened and prosecuted its subrogation claim. Defendants admitted liability for damages actually sustained by plaintiffs. Recovery was awarded all the plaintiffs and the intervener, and defendants have paid all such awards except that for $23,500 for the personal injuries of Dr. Morphis. They paid his recovery for $1,629.35 for medical and hospital expenses. Defendants appeal from the judgment awarding Dr. Morphis recovery other than for the medical and hospital expenses.

Appellee is a medical doctor, specializing in the field of radiology. He is a partner in a radiological group, there being five other partners and an employed doctor. At the time of the accident, appellee was 39 years of age, and in active practice, earning in excess of $2,000 per month. According to his allegations, as a result of the collision he was totally disabled for more than four months; he sustained permanent partial disability; he suffered excruciating pain for about three months, and pain in a

milder degree to the time of the trial, which will continue for an indefinite period. Appellants denied appellee's allegations concerning the extent and duration of his injuries and disability, and denied that his loss of personal earnings was substantial; alleged that his claim for damages was greatly exaggerated; but admitted that he was totally disabled for about two months and partially disabled for some further period, and that he had incurred $1,629.35 in medical and hospital expenses.

Appellants alleged that appellee continued to receive his proportionate share of the profits of the partnership. This allegation was stricken on exception, and on appellee's motion appellants were instructed to refrain from inquiring into that matter in the presence of the jury. This evidence was offered on the trial, and was excluded. By a group of fifty points, appellants exhaustively and ably present the contention that the exclusion of this evidence was reversible error.

The partnership agreement provided that if a partner were disabled he would receive his proportionate share of the profits for three months, and one-half of such share for the next six months. Appellee was actually paid his full share for the last four months of 1957. His participation in the partnership profits was shown for 1955, 1956, the first eight months of 1957, and 1958. His income tax returns for 1955, 1956, and 1958 were introduced. The 1957 return was offered by appellants but was excluded. The payments to appellee for the last four months of 1957 averaged nearly as much per month as for the first eight months of that year. There is no contention that appellants did not sufficiently tender the documents referred to, as well as other partnership records, including the partnership agreement, collectively, separately, by line and by item.

We think it would not have been proper to cut down appellee's recovery by the amount, or by any amount, paid to him by the partnership, whether in accordance with the contract, or as a gratuity. 13 Tex. Jur., pp. 180, 181, secs. 80, 81, 82, 83. We do not understand that appellants so contend. But they insist that such evidence was admissible on the extent and duration of appellee's disability, and was relevant to the general issue of damages, and to his loss of earnings and loss of earning capacity. They say this evidence would have aided the jury in deciding whether the reason appellee did not work more than he did was that he was drawing pay while not working, rather than because he was disabled from working. They cite Union Transports, Inc. v. Braun, Tex.Civ.App., 318 S.W.2d 927; McElwain v. Capotosto, 332 Mass. 1, 122 N.E.2d 901, and Congdon v. Howe Scale Co., 66 Vt. 255, 29 A. 253, to sustain their contention. The question is not free from difficulty, but we have reached the conclusion these points do not reflect reversible error.

In the Braun case a truck driver suing for damages for loss of time on account of injuries testified that he was incapacitated to drive a truck for four and one-half months after the accident, which was the only reason he did not work. He admitted that he was examined by a physician the day after the collision and that X-rays taken by the doctor did not show any physical injury. It was held not error to show that his driver's license had been cancelled after the collision, which might account for his not driving a truck after that time.

In the Capotosto case it was held to be within the discretion of the judge to admit testimony that the injured party was entitled to pay from his employer for part of the time he did not work after the injury, the court saying that the evidence had some bearing on the issue whether his absence from work was really due to injuries or was caused or prolonged by the fact that he would be paid wages while not working. We note that the case was before the court without a jury, and while finding that the defendant was negligent, the court found that the plaintiff suffered no injury as a

direct and proximate result of such negligence.

In the Congdon case it was held proper to allow evidence that the plaintiff held a policy of insurance against accidents, the court saying that evidence in the case tended to show that his injuries were slight, and largely feigned.

We think all of these cases are distinguishable from the case at bar because in all of them there was evidence that the claimants were not injured, or their injuries were exaggerated.

On the proposition that it was not error to exclude the proffered evidence, appellee cites Texas Cities Gas Co. v. Dickens, Tex. Civ.App., 156 S.W.2d 1010; Mosby v. Texas & P. Ry. Co., Tex.Civ.App., 191 S.W.2d 55; Texas Cent. R. Co. v. Cameron, Tex. Civ.App., 149 S.W. 709, error refused; Chapman v. Evans, Tex.Civ.App., 186 S.W. 2d 827; Graves v. Poe, Tex.Civ.App., 118 S.W.2d 969; Hellmueller Baking Co. v. Risen, 295 Ky. 273, 174 S.W.2d 134; and Louisville & N. R. Co. v. Utz, 299 Ky. 765, 187 S.W.2d 439.

In the Texas cases cited by appellee, it was held that evidence of collateral payments to the injured parties was either properly excluded or improperly admitted. Although it is not clear whether the admission of such evidence was urged as being material on the issue of malingering, or whether it was offered to abate the damages on account of partial compensation, we note that in the Chapman case the court said [186 S.W.2d 831]: "As pointed out above, defendant's counsel raised the question of plaintiff, J. A. Jeffrey, being protected by insurance. Evidently he thought that such fact would relieve him of liability or in some other way help him in the eyes of the jury; it should do neither." The case was reversed and remanded even though the court excluded the evidence and instructed the jury not to consider the questions and comments of counsel made in the effort to get the evidence admitted. In the Kentucky cases it

was held that evidence that the claimants received compensation from collateral sources was without probative force, was immaterial, and was inadmissible on issues similar to those urged by appellants.

Shea v. Rettie (Murphy v. Rettie), 287 Mass. 454, 192 N.E. 44, 45, 95 A.L.R. 571, was a suit by police officers for damages for personal injuries allegedly caused by negligence of the defendant. Each was paid one-half of his regular pay for the first three weeks of disability, and thereafter each was paid full wages while unable to perform his duties as a police officer, but did other work for the city. The question for determination was whether the judge in assessing damages erred in not taking into account the fact that during the disability of the plaintiffs they were paid their wages by the city. The court said: "The fact that payments were made by the city does not indicate the extent of the plaintiff's disability or incapacity to labor. The amounts paid do not show their earning capacity after they were injured. * * * They have no bearing on his liability or upon the extent of the plaintiffs' injury nor do they afford a measure of the plaintiffs' working capacity during their disability. The fact that such payments were made, and their amount, were rightly disregarded by the judge in estimating the plaintiffs' damages."

Had there been any evidence that appellee was malingering a different question might be presented. But we find no such evidence. Indeed, appellants admitted that appellee sustained rather serious injuries and disability. We do not think the fact that appellee had an arrangement with his partners whereby loss of time on account of accident or illness would not deprive him of a steady income would be evidence that appellee exaggerated his injuries. If that evidence is to be admitted in such a case as this, the very salutary practice of providing by insurance or otherwise for the contingencies and hazards of existence would be discouraged. If appellants could have profited from the admission of such

evidence, it would have been at the expense of one whose only fault, so far as we can see, was to make provision for the time when his earnings might be lessened or might cease. It may be better for the wrongdoer to suffer a possible disadvantage than for an innocent person to suffer from the certain evils of a different practice. This group of points is overruled.

By another group of points appellants contend that it was error to overrule their motion to exclude evidence concerning the force of the impact and concerning the conditions of the vehicles just after the collision; to overrule their motion to strike appellee's testimony that it was a head-on collision; and to admit into evidence a picture of appellee's automobile taken just after the collision.

█ The argument is that since appellants stipulated that the impact was of sufficient force to cause the injuries claimed by plaintiffs, the challenged evidence was immaterial and prejudicial. We are unable to agree with this contention. Along with this stipulation, appellants denied that there were substantial injuries, and alleged that plaintiffs' claims of injuries were greatly exaggerated. After acknowledging their liability to pay the medical expenses of appellee, of his son, and of his nephew, and the damage to appellee's automobile, appellants acknowledged their liability to pay "any other damages which the plaintiffs establish by a preponderance of the evidence their entitlement to on the trial of this case." As to the extent of the personal injuries, that was exactly plaintiffs' burden before the "acknowledgment." Not being relieved of the burden of proving their injuries by a preponderance of the evidence, plaintiffs showed what transpired at the scene of the collision. They proved the "corpus delicti." Except when there is an admission that plaintiffs were injured in a collision of two automobiles as claimed by them, we think it is not error to allow them to show the force of the impact, that it was a head-on collision, and to introduce

a picture of the wrecked car in which they were riding at the time they were hurt. These points are overruled.

█ The last point is that the verdict for appellee for damages for personal injuries is excessive. This court has not yet discovered a formula for an exact dollars and cents measurement of adequate compensation for physical pain and mental anguish, past or future, and we are not much better equipped to measure probable pecuniary loss on account of decreased earning capacity in the future. We are not better qualified than the jury to pass on such matters. That appellee was seriously injured there can be no question. That is not difficult to believe since appellants stipulated that his medical and hospital expenses exceeded $1,600. The jury could have found that the injuries to appellee's back, ribs, hands and face were painful and disabling, and that the injuries to his knee and thumb were painful and permanent. There was evidence that as a result of his injuries, appellee has developed arthritis, which may become progressively worse. On the damages issue, the jury was instructed that it might consider physical pain and mental anguish suffered from the date of the accident to the date of trial, and what may be suffered in the future; and decreased earning capacity in the past and in the future. Appellants admitted that appellee was totally disabled for two months and partially disabled thereafter. They evidently thought all elements of recovery submitted by the court were raised by the evidence, since there was no objection to the charge. There was no indication that the jury was influenced by passion or prejudice. We cannot say that the verdict was excessive.

The judgment is affirmed.

## On Motion for Rehearing

We were in error in saying in our original opinion that appellants had paid appellee the sum of $1,629.35 for medical and hospital expenses. They have not paid it;

but they admitted in their answer that appellee "incurred the total sum of $1,629.35 in medical and hospital expenses as a proximate result of such injuries," and that "The defendants acknowledge their liability to pay Dr. Morphis his medical expenses * * *."

We did not discuss severally all of appellants' points in our original opinion; but we considered them all and believed and still believe that reversible error was not reflected.

The motion for rehearing is overruled.