ACUFF GIN COMPANY, Appellant,

v.

BURTON LINGO COMPANY, Appellee.

No. 3911.

Court of Civil Appeals of Texas.

Eastland.

Sept. 25, 1964.

Rehearing Denied Oct. 16, 1964.

Turpin, Smith, Dyer & Hardie, James T. Smith, Midland, R. H. Weaver, Big Spring, for appellant.

Little & Little, Big Spring, John H. Hall and Hobert Price, Strasburger, Price, Kelton, Miller & Martin, Dallas, for appellee.

WALTER, Justice.

Burton Lingo Company filed suit against Acuff Gin Company for damages it sustained when its property was destroyed by fire. Based on a verdict, judgment was rendered in favor of Burton Lingo for $47,000.00.

Acuff has appealed. It contends the court erred in failing to grant its motion for an instructed verdict and for judgment non obstante veredicto because there was no evidence to support the jury's answers that the operation of the gin without a screen over the smokestack of the burr burner was negligence and a proximate cause of the fire. It also contends there was insufficient evidence to support such answers and that such findings are against the great weight and preponderance of the evidence. It also complains about appellee's argument to the jury.

Burton Lingo's lumber yard at Coahoma was destroyed by fire on January 4th, 1962. Acuff's gin was located across the street west of the lumber yard. As a part of its operations it had a brick burr burner about 31 feet high and about 6 feet across the top. The following testimony was given by Mr. A. D. Shive, manager of the gin: "Q. Now, did the brick burr burner, the one on the east, have any sort of a covering over the top of it? A. No; Sir. Q. It was wide open? A. Yes, sir." He further testified: I run the Acuff Gin in Coahoma and am its manager. My son, Wendell, is assistant manager and my wife keeps the books. The gin property covers a city block with the exception of two lots. Burton Lingo's yard is located east of the gin. The lint that comes from the gin will travel some distance with a breeze or a wind and will catch fire easily from sparks. The lint is very fine and a spark will set it off easily. We have had a brick burr burner in operation at the gin since 1950 or '51. I first learned about the lumber yard fire about 3:30 or 4:00 o'clock in the afternoon. The general direction of the wind was from the northwest. I would say the wind was blowing toward the front end of the lumber yard on that day. When the lumber yard was on fire the blaze was traveling to the southeast. I was coming from the office to the gin when they told me the lumber yard was on fire. "Q. The very first thing you did when you saw the fire was to run around it? A. Uh-huh. Q. To see if any of the lint from your gin was on fire around it? A. Yes, Sir." The wind can become such a problem at times that we have to shut the gin down because of the fire hazard of the sparks from the burner. On the day of the fire I had employed a man to water down the

gin grounds so that it would not catch fire from the sparks. The reason I watered the lint on the gin property was to lessen the fire hazard. We do not clean out the brick burr burner during the ginning season. We clean it out in the summertime. We do not start a fire in the burr burner each day. This is not necessary unless we have shut down for the week end. I have seen sparks coming out of the top of the burr burner. I have seen such sparks when the wind was high and have seen them travel in the air a distance of about fifty feet. If the wind wasn't high the sparks would be out by the time they hit the ground.

Lint that comes from the exhaust at the back of the gin hangs on telephone lines and electric lines and is found over on the east side of the block where the lumber yard is located. To a certain extent it is inflammable.

At one time before the fire, I think we had a screen over the lint burner. The screen is placed over the burner as a spark resister. That is what they claim a screen does. I had a screen on the lint burner at one time to arrest sparks. The screen is used to keep the sparks from blowing and flying. About noon on the day of the fire the wind was so strong, I thought it advisable to have a watchman and I put Carl Parrish out there with a hundred foot garden hose to wet down the area to prevent a fire.

Charles Coyt Williams testified substantially as follows: I lived in Coahoma about 17 years. I was engaged in the plumbing business while I live there. My home was located north of Burton Lingo Lumber Company. The Acuff Gin was located on the block west of me. While I was living at this address sparks from the gin burners fell all over my place. My fence rows and the excelsior in my air conditioner caught on fire. Lint from the gin would stack up on the fences. The grass along my fence row caught on fire nearly every year. At night "it looks about like a million candles or those lightening bugs in the air." "They were coming out of those burners at the top—." "But if you had any wind in your direction, well, they would just fall right on you." I could see the sparks coming across the street from the burners to my property. I watered down my roof because I was afraid it would catch on fire. I talked to the manager of the gin and asked him if there was something he could do about the burners, the fire and the smoke and he said "it wasn't and that if I didn't like it I could move." During the ginning season of 1961 when the wind was out of the west, my fence row caught on fire and I called the gin and they sent several men over there and put it out.

W. C. Hutchins, manager of the lumber yard, testified that he had a screen over his trash barrel to keep the sparks from flying.

We have considered the entire record and find that the jury's answers that appellant was guilty of negligence which was a proximate cause of the fire, are not against the great weight and preponderance of the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

Appellant submits Smerke v. Office Equipment Company, 138 Tex. 236, 158 S.W.2d 302 (1941) as authority for the rule which we are to follow in deciding its point on counsel's argument to the jury. The rule announced by this decision is no longer controlling. The rule of "presumed injury" has not prevailed in Texas since the adoption of Rule 434, Texas Rules of Civil Procedure. The Development of the Doctrine of Harmless Error in Texas, 31 Texas Law Review, page 1 by Chief Justice Calvert. "Before a judgment is reversed because of argument of counsel two things must appear: the argument must be improper, and it must be such as to satisfy the reviewing court that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." Aultman et vir v. Dallas Rail-

way & Terminal Company, 152 Tex. 509, 260 S.W.2d 596.

 We have carefully considered the argument. We do not think the nature of the argument was such as was reasonably calculated to cause and probably did cause the rendition of an improper judgment.

We find there was some evidence of probative force to support the jury's answers on negligence and proximate cause.

We have considered all of appellant's points and find no merit in them. They are overruled.

The judgment is affirmed.