**TEXAS GENERAL INDEMNITY COMPANY, Appellant,**

v.

**Floyd HAMILTON, Appellee.**

**No. 14624.**

Court of Civil Appeals of Texas.

San Antonio.

Nov. 1, 1967.

Clemens, Knight, Weiss & Spencer, San Antonio, for appellant.

Carter, Callender, Onion & Branton, Frank C. Rodgers, (Trial Court only) San Antonio, for appellee.

BARROW, Chief Justice.

Appellee recovered judgment for total and permanent disability benefits under the Texas Workmen's Compensation Act, based upon a jury verdict. Appellant carrier has perfected this appeal wherein it asserts that this judgment should be reversed and the cause remanded for a new trial because of prejudicial statements made on two occasions by one of the attorneys for appellee, and because of the trial court's refusal to admit certain evidence to impeach appellee and his medical witness as to who referred appellee to said doctor.

Under the undisputed evidence, appellee sustained an accidental injury in the scope of his employment as a gutter for Roegelein Provision Company on February 4, 1965, when he slipped and fell on his back. The nature of the injury and extent of the disability was the principal issue in dispute in the trial court. Appellee never resumed work for Roegelein, for whom he had worked about five years prior to the accident, and was employed by another employer, doing light work, for only a few days between the accident and trial on January 9, 1967. Four medical witnesses testified and their testimony constitutes 257 of the 407 pages in the statement of facts. In addition, a lay witness corroborated appellee's complaints of back pain subsequent to the accident.

Shortly after the fall, appellee was taken to the Roegelein company doctor, Dr. Beach, for treatment. On February 15, 1965, Dr. Beach referred appellee to Dr. Williamson, a specialist in orthopedic surgery. Dr. Williamson found no evidence of nerve root involvement in appellee's back at that time and prescribed treatment by a physical therapist. Appellee continued to complain of pain in his back. He tried on one occasion, about a month after the accident, to secure light duties from Roegelein, but it had no work of this nature. Dr. Williamson examined appellee again on November 8, 1965, and at that time suspected a herniated disc on the left side at about the L–4 level. Appellee was hospitalized by Dr. Williamson from November 29 to December 6, 1965, and on December 1, a myelogram was performed to confirm this preliminary diagnosis and to specifically locate the herniated disc.

A myelogram is performed by injection of an opaque substance called "dye" into the spinal canal with a needle, and by means of a fluoroscopic screen the various interspaces of the spine are viewed. This procedure is a widely recognized diagnostic procedure used to aid in confirming and locating a herniated disc, and the evidence shows it is from 75% to 90% accurate. This myelogram was performed by Dr. Williamson in collaboration with Dr. Elmendorf, a radiological specialist. Each of these doctors testified on behalf of appel-

lant that the myelogram did not demonstrate any abnormality and that the X-ray films of this procedure were essentially negative. Appellee experienced great pain during this procedure and because of his reaction some of the dye was left in his spinal canal. He testified that he even tried to pull the needle from his back. Under the record in this case, it is not unusual to leave a little dye in the canal although it can cause archnoiditis, which condition produces some symptoms similar to those caused by a herniated disc.

Dr. Price, a specialist in neurological surgery, examined appellee at the hospital on December 4, 1965, at the request of Dr. Williamson. Dr. Price testified on behalf of appellant that this neurological examination was essentially normal and that he could find no physical basis for appellee's continued complaints of back pain and limited motion in his back and legs.

Dr. Gregorio Canales, a specialist in orthopedic surgery, testified an behalf of appellant that he had examined appellee on December 17, 1965, and again on March 2, 1966. On each occasion, appellee was complaining of back pain and had a number of subjective symptoms of a herniated disc in the area of L–4, L–5 and S–1 of his spine. On March 2, 1966, these subjective findings were corroborated in part by objective findings. Dr. Canales testified that appellee was totally disabled at the time; of these examinations. Insofar as permanency of this condition was concerned, Dr. Canales expressed the opinion on direct evidence that he recommended removal of the dye from appellee's spinal canal and if the symptoms persisted, he would suspect a herniated disc and recommend exploratory surgery. His direct testimony clearly recommended removal of the dye and any subsequent opinion would have to be based on appellee's condition after this was accomplished.

On cross-examination he testified that he made such a recommendation to appellee and hospitalized him for that purpose on March 30, 1966. However, just prior to commencing the procedure, appellee refused to permit Dr. Canales to insert the needle and the procedure was cancelled. Dr. Canales had not seen appellee since this occurrence.

On redirect examination, appellee's attorney inquired as to the cost of surgery and after appellant objected to the materiality of such question, appellee's attorney stated in the presence of the jury that appellant had injected this issue into the case despite appellee's motion in limine to prohibit appellant from showing benefits of surgery. Appellee's attorney further stated that he was withdrawing his motion in limine and in the presence of the jury demanded that appellant's attorney answer "Yes" or "No" as to whether appellant would pay all the necessary expenses of any operation. The trial court promptly sustained appellant's objection to such demand. Shortly thereafter, the examination of Dr. Canales was completed and in chambers appellant moved for mistrial, and by this appeal complains of the trial court's failure to grant same. After appellant's motion was overruled, appellee also moved for mistrial, based upon his erroneous assumption that appellant had injected the issue of surgery into the case. His motion was denied by the trial court.

The demand of appellee's attorney in the presence of the jury was clearly improper. It is now settled law, as was pointed out by him in his motion for limine at the beginning of the trial, that the trial court has no power to order or supervise an operation. Houston Fire & Cas. Ins. Co. v. Dieter, 409 S.W.2d 838 (Tex.Sup. 1966); Garcia v. Travelers Ins. Co., 365 S.W.2d 916 (Tex.Sup.1965); Truck Ins. Exchange v. Seelbach, 161 Tex. 250, 339 S.W.2d 521 (1960). It is our opinion, however, from an examination of the entire record, that reversible error is not shown by this improper statement of appellee's attorney.

It is seen that the trial court promptly sustained appellant's objection to this conduct. Furthermore, the record clearly demonstrates that the reason the dye was not removed by Dr. Canales was not a lack of funds, but rather appellee's refusal to permit Dr. Canales to do so, although he had gone to the X-ray room of the hospital for that specific purpose. The dye was not all removed at the time of the original myelogram procedure because of appellee's severe reaction to the pain. The need for surgery could not be determined until Dr. Canales had observed appellee's reaction to removal of the dye. There is nothing in the record to indicate any reluctance on the part of appellant to furnish necessary medical assistance at any time to appellee. Although we certainly do not condone this improper action, we cannot say from an examination of the entire record that such action was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. This point is therefore overruled. Rule 434, Texas Rules of Civil Procedure.

Both appellee and Dr. Canales testified that appellee had been referred to this doctor by the Vocational Rehabilitation Agency connected with the Industrial Accident Board. To impeach this testimony, appellant offered evidence that at the time of taking his deposition appellee testified that he went to see Dr. Canales after he got a letter from Austin in response to his request for social security, and that the social security people recommended that he see Dr. Canales. Appellant also offered appellee's testimony that he received $255.00 a month from the government for disability benefits. While recognizing that the "collateral source" rule generally prohibits evidence of collateral payments from sources other than the defendant,[1] appellant urges that such rule has no application here because it permitted appellee to establish his case upon a false and misleading factual basis. It urges the jury should have been

informed that appellee's purpose in going to Dr. Canales was not to be rehabilitated, but rather to obtain a monthly disability pension.

The trial court did not err in sustaining appellee's objection to this evidence. There was considerable other evidence admitted without objection, relating to appellee's action in trying to be rehabilitated by the Vocational Rehabilitation Agency. Also, whether appellee went to Dr. Canales at the request of the Social Security Agency or the Vocational Rehabilitation Agency is really immaterial, in that in either event appellee's attorney would be able to argue, as he did, that Dr. Canales was an impartial, neutral witness.

Appellant's final point relates to the statement of appellee's attorney during final argument, and verified by him at that time by writing on the blackboard that compensation benefits were limited to a period of 401 weeks. No such pleading was read to the jury and there was no evidence or instruction to this effect; therefore, the statement was clearly outside the record and improper. Although appellant's objections to same were promptly sustained, the attorney persisted in repeating same again and in inferring it a third time. Such disregard of the court's rulings is highly improper. Ex parte Fisher, 146 Tex. 328, 206 S.W.2d 1000 (1947).

We cannot say from an examination of this record that reversible error is shown by this improper statement of the law by counsel. In Highlands Ins. Co. v. Daniel, 410 S.W.2d 491 (Tex.Civ.App.—Tyler 1967, writ ref's n. r. e.), the cases on this subject are fully reviewed. It is there pointed out that none of the numerous cases dealing with such actions held that such error constituted reversible error. We cannot say that it is shown by the record before us.

The judgment of the trial court is affirmed.

---

1. Traders & General Ins. Co. v. Reed, 376 S.W.2d 591, 593 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n. r. e.); 25A C.J.S. Damages § 160; 7 A.L.R.3d 519.