PACIFIC EMPLOYERS INDEMNITY
COMPANY, Appellant,

v.

James B. JOHNSON, Appellee.

No. 6976.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 5, 1968.

Bryan & Patton, Houston, for appellant.

Horace F. Brown, Houston, for appellee.

STEPHENSON, Justice.

This is a suit brought under the Workmen's Compensation Law. Trial was by jury and judgment was rendered upon the verdict that plaintiff recover for total and permanent disability. The parties will be referred to here as they were in the trial court.

The primary points of error are that the finding by the jury that plaintiff was injured in the course and scope of his employment has no support in the evidence, that the evidence is insufficient, and that such finding is contrary to the weight and preponderance of the evidence. In passing upon the "no-evidence" point, we look only to the evidence favorable to such finding.

Plaintiff testified: He had worked for this same employer, Meadows Drilling Company, before, but on this job he had been

working about 14 days at the time he received this accidental injury. The employer did not have ice and water at the rig, so some member of the crew had to bring it out there. There was water at the job site but it was not drinkable. There were four members of this crew, including plaintiff, and they would take turns driving their car. No member of the car pool paid anything to the other members for the ride. The day one of them drove the car he was also responsible for buying the ice and bringing it and the water to the rig. The employer furnished the can and reimbursed the members of the crew for the cost of the ice at the end of each month. It is customary on oilfield jobs for the employees to bring ice to the job site, and for each employee to take his turn. If the ice was bought in Livingston for 61 cents when it could be bought in Conroe for 31 cents there would be a squabble with the company. It was customary to buy the ice in Conroe for 31 cents, although no one told the employees they had to buy it there. He lived near Soda, Texas, and there were two possible routes to the job site located in the Bammel Field west of Houston. (These two routes will be called the "Liberty-Dayton" route and the "Conroe" route.) The first "around four or five days" he drove his own car to work taking the "Liberty-Dayton" route. Plaintiff took the "Liberty-Dayton" route because even though it was a little farther, about seven miles of the "Conroe" route were under construction. Then his boss, Red Wiggins, told him "they had a little squabble out there wanting the crew to all haul ice and water" and asked him to get into the car pool. Plaintiff started taking another route to the job site after he joined the car pool, this being the "Conroe" route. On the day for plaintiff to drive, he would take the "Conroe" route and would first pick up Wiggins about seven miles east of Conroe near Cut'N' Shoot, proceed into Conroe and purchase the ice and then drive to a cafe in Conroe and pick up the other two members of the crew. Plaintiff and Wiggins would take turns driving from near Cut'N'Shoot into Conroe to meet the other members of the crew. After joining the car pool, plaintiff drove his own car alone by the "Liberty-Dayton" route two or three times, including the day before the accident, and went by the "Conroe" route seven, eight or nine times. The day of the accident, it was plaintiff's day to drive and he received the injuries complained of when his automobile rolled over while on the "Conroe" route before picking up any of his passengers. If it hadn't been his day to pick up the ice and water, he would have gone the "Liberty-Dayton" route, because of the construction on the other route. Plaintiff had to make up his mind the night before this accident to drive the "Conroe" route the next day or he would lose his job. The hourly pay began when the employees arrived at the job site and started to work.

Whether or not plaintiff was in the course of his employment when he was injured is controlled by Sections 1 and 1b of Article 8309, V.T.C.S., as judicially interpreted. The second part of Section 1b deals with the dual purpose rule. It states, in effect, that an injury occurring during travel which is for the dual purpose of furthering the affairs or business of the employer and of furthering the employee's personal or private affairs shall not be deemed in the course of employment "unless the trip to the place of occurrence of said injury would have been made even had there been no personal or private affairs of the employee to be furthered by said trip, and unless said trip would not have been made had there been no affairs or business of the employer to be furthered by said trip."

█ The leading case involving a situation similar to that of the present case is Janak v. Texas Employers' Insurance Association (Tex.) 381 S.W.2d 176. This Janak case also involved a drilling crew, a car pool and water and ice. The Supreme Court first stated the general rule that an injury occurring while traveling to and

from work on a public street or highway is not compensable. The Supreme Court then stated that the jury was justified in, concluding that ice for water to be drunk by employees was reasonably essential to continuation of the drilling operations, and thus that the deviation to obtain it was impliedly directed by the employer. As to the "deviation" mentioned, the facts of the Janak case showed that the crew did not take the shortest and most convenient route to the drilling site, but took a longer route for the purpose of pickng up ice for their water. The crew knew that this was the only place open early enough for them to buy the ice in order to reach the drill site by the time their work day was to begin. The Supreme Court made it clear in the Janak case, by referring to the case of Travelers Ins. Co. v. Forson, Tex.Civ. App., 268 S.W.2d 219 (n. r. e.), that an employee injured while traveling to work on the regular route between home and employment would not be in the course of his employment even though he was a part of a car pool carrying ice.

■ The facts of the present case show that the "Conroe" route was the most direct route for everyone except plaintiff, and if any one of them had suffered an injury after being picked up by plaintiff, that it would not be compensable. There is probably evidence in this record which would have supported a finding of "deviation" by the jury, as there is nothing in the opinions cited to us indicating that distance is the only factor to be considered in determining "deviation." The words "regular" and "convenient" are also used by the courts and under the evidence most favorable to the findings by the jury, the fact that there was construction on the "Conroe" route could make the "Liberty-Dayton" route the more convenient. Also applying the most favorable interpretation to plaintiff's testimony as to the number of times he had ridden or driven each route, if he had been working about 14 days before receiving the injury and had driven the "Liberty-Dayton" route five times before joining the car pool, and three times after joining the car pool, and had ridden on the "Conroe" route only seven times, then a jury could conclude the "Liberty-Dayton" route was plaintiff's regular route.

However, even though plaintiff testified that he got into the car pool at his employer's request in order to take his turn bringing the ice and water to the drill site, and because he thought he would lose his job if he refused, there is no evidence that the employer wanted plaintiff to be a member of the car pool for any reason except to get the ice and water to the well. Under the decisions, a deviation of routes for the purpose of bringing ice and water to the well would be in the course of employment, while a deviation for the purpose of taking part in a car pool, would not. Under the evidence, it would not have been necessary to have a car pool for the purpose of getting water and ice to the well site, as the four men who were members of this car pool could have driven separate cars and still have rotated the responsibility for bringing the water and ice to the well site. Plaintiff testified that the car pool was not worked out in order to get the water.

In the Janak case, supra, as stated above, a "deviation" was necessary because the route taken was the only one upon which the ice could be bought in order to get to work on time. The evidence in the present case shows plaintiff could have bought ice at Livingston, if he had taken the "Liberty-Dayton" route. The only reason given for not buying the ice in Livingston was a suggestion that the ice would cost 61 cents instead of 31 cents and "there would be a squabble with the company and the hands about that."

We have concluded that the evidence shows as a matter of law that if this injury sustained by plaintiff occurred while plaintiff was deviating from his regular route, that the reason for the deviation was personal, that is, for the benefit of the car

pool, and not business for the employer, that is, to pick up the ice and water.

Reversed and rendered that plaintiff take nothing.