**PACIFIC EMPLOYERS INDEMNITY COMPANY, Appellant,**

**v.**

**James B. JOHNSON, Appellee.**

**No. 6976.**

Court of Civil Appeals of Texas.

Beaumont.

Nov. 13, 1969.

Motion for Rehearing Overruled
Nov. 26, 1969.

Bryan & Patton, Houston, for appellant.

Brown & Cecil, Bray, Ashley, Shaver & Watrous, Houston, for appellee.

KEITH, Justice.

In this workmen's compensation suit, Johnson recovered judgment for maximum benefits for total and permanent disability, payable in a lump sum, as well as certain medical expenses. Upon appeal, in an opinion by Judge Stephenson, this court reversed that judgment of the trial court and rendered judgment for the defendant, 431 S.W.2d 787. This judgment, in turn, was reversed by the Supreme Court and the cause was remanded for consideration of the point of appellant asserting that the jury's answer to Special Issue No. 11 (the course and scope of employment issue) was contrary to the overwhelming weight and preponderance of the evidence, Johnson v. Pacific Employers Indemnity Co., 439 S.W.2d 824 (Tex.Sup., 1969).

In considering the point now before us, we consider the record as a whole, In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951), in the light of the proper rule of law applicable to this case as stated by the Supreme Court.

Following the reversal of our decision, we requested supplemental briefs of the parties confined to such matters as required our review under the Supreme Court opinion, and the sufficiency of the evidence point with reference to Special Issue No. 11 has been discussed by both parties. Since there is a full and comprehensive statement of the facts in each of the opinions involving this case, no useful purpose would be served by restating the same. We have re-examined the entire record, and when we apply the correct rule of law as enunciated by the Supreme Court, we are of the opinion that the finding of the jury to Special Issue No. 11 is not so contrary to the overwhelming preponderance of the evidence as to require us to set it aside.

However, defendant argues at length that we should examine the evidence from the standpoint of the employer having "assurance" that ice and water would be available to the members of the crew.[1] This argument, if it has any validity, should have been addressed to the Supreme Court in the motion for rehearing. We accept the holding of our Supreme Court in its entirety and decline to engraft limitations thereon or to reconsider the basis thereof. We do not, as does our Brother STEPH-

---

1. The Supreme Court language which forms the basis of the argument is: " * * * transporting of ice to a drilling rig is in furtherance of the employer's business. We now hold that it is also in furtherance of the employer's business that the transportation be under circumstances which will give *assurance* to the members of the drilling crew that the ice and water will be available at the beginning of the work day." (439 S.W. 2d at 829, emphasis supplied.)

ENSON, speculate on the basis of the holding of the Supreme Court. We are directed by the mandate to pass upon all issues remaining in the case and our attention was directed specifically to that challenging the sufficiency of the evidence to support the finding of course and scope of employment. (439 S.W.2d at 829.) We must do this by applying the correct rule of law laid down for our guidance and in a manner "not inconsistent with this opinion." (Id. at p. 830.)

Other litigants may raise, in other cases and upon another day, the "assumptions" of our dissenting brother, but we do *not* base our opinion upon any such assumptions. Instead, we determine the nature of the judgment of the Supreme Court from its opinion. Perry National Bank v. Eidson, 161 Tex. 340, 340 S.W.2d 483, 487, fn. 2 (1960).

Applying the correct rule of law to the facts in this record, we overrule defendant's points challenging the sufficiency of the evidence to support the answer of the jury to the issue on course and scope of the employment of Johnson.

In its supplemental brief, defendant contends that there is continuing vitality in its Points Five, Six, and Seven, complaining of the instructions given to the jury in connection with the issue on course of employment. These points charge that the instruction, which included both Section 1 and Section 1b of Article 8309, Vernon's Ann.Civ.St., amounted to a "global" issue, a general charge, and "was so confusing that a jury could not be expected to comprehend its meaning and apply it to the particular facts of this case." The argument is that the issues to the jury "were not pinpointed, and the Jury could not possibly have made an intelligent decision on the controlling issues of fact." We disagree.

■ The evidence in this case required the inclusion of the limitation found in Section 1b, supra, and its omission would

have been a just cause of complaint. However, the trial court was not required to break the issue down into evidentiary facts when such could be grouped in one ultimate issue as was done here. Fritzmeier v. Texas Employers' Ins. Ass'n., 131 Tex. 165, 114 S.W.2d 236, 239 (1938); Maryland Casualty Co. v. Smithson, 341 S.W.2d 951, 956 (Dallas Tex.Civ.App., 1960, error ref. n. r. e.). Points Five, Six, and Seven are overruled.

In this case the plaintiff sought a lump sum payment of his compensation in the event the jury found that this disability was total and permanent. Upon his evidence in chief, he testified that he had borrowed money "from first one and another"; that he had bought groceries on credit and still owed for them; and, that it would work a hardship upon him to be paid weekly rather than in a lump sum. His wife testified that he had not done any work for pay since the accident and that they had "created a lot of bills" since the accident.

Pursuant to a motion in limine prohibiting interrogation of plaintiff in the presence of the jury concerning collateral receipts, defendant elicited from the plaintiff, in the absence of the jury, the fact that he was receiving eighty dollars a month from the Veterans Administration because he was a totally disabled veteran of World War II. This monthly payment had originally been $110.00, but had been reduced before trial. Defendant's counsel, having procured this testimony from the plaintiff, then said:

"Your Honor, we tender that evidence for the limited purpose of contradiction of their plea for lump sum.

"THE COURT: Overruled."

Attempting to sidestep the applicability of the collateral source rule, defendant asserts that the right to a lump sum recovery is a question of fact, citing Texas Employers' Insurance Ass'n v. King, 244 S.W. 2d 369 (Ft. Worth, Tex.Civ.App., 1951,

no writ), with which we have no disagreement; and, under General Accident Fire & Life Assurance Corporation v. Coffman, 326 S.W.2d 287 (Waco Tex.Civ.App., 1959, error ref. n. r. e.), the exclusion of the tendered evidence was reversible error. In addition, reference is made to the language found in Kainer v. Walker, 377 S.W.2d 613, 617 (Tex.Sup., 1964).[2]

From this premise, defendant argues that since the jury knew from the pleadings that plaintiff would be paid only $35.00 per week as compensation benefits, or roughly $150.00 per month, they should have been permitted to consider that plaintiff had been receiving $110.00 per month for some time before the trial, and was even then receiving $80.00 per month from the Veterans Administration. It is said that, with this information, the jury "may well have determined that the best interests of the Plaintiff would have been served by his drawing weekly benefits." We pause at this point to mention the fact that the defendant had paid nothing to plaintiff, as weekly compensation benefits, medical attention, or otherwise. With an income of $80.00 per month for the support of a wife and eleven-year old child, it is not difficult to see why plaintiff owed a grocery bill.

■ The collateral source rule generally prohibits such testimony. Traders & General Insurance Co. v. Reed, 376 S.W.2d 591, 593 (Corpus Christi Tex.Civ.App., 1964, error ref. n. r. e.), and authorities therein cited. See also Texas General Indemnity Co. v. Hamilton, 420 S.W.2d 735, 738 (San Antonio Tex.Civ.App., 1967, no writ), and Annotation in 7 A.L.R.3d 516, 521. But, defendant maintains that such evidence was proper for consideration by the jury upon

the issue of lump sum payment, when properly limited by an appropriate instruction by the court. In passing upon this contention, we will assume that the defendant made an adequate proffer of the excluded evidence. Joy v. Joy, 156 S.W.2d 547, 552 (Eastland Tex.Civ.App., 1941, error ref. want of merit); 56 Tex.Jur.2d, Trial, § 166, p. 512.

However, a careful review of the evidence discloses that the jury knew that in the accident plaintiff received a back injury of sufficient gravity that it resulted in at least temporary partial paralysis of his legs. He was operated on in the Veterans Administration Hospital and a spinal fusion was performed. Back braces and leg braces were prescribed by the physicians at the Veterans Hospital—not by the defendant. The critical question in the case was the one of course and scope of employment of the plaintiff—not the nature, extent, and duration of his incapacity or of his financial condition. It is difficult to see how the admission of the evidence could have affected the verdict one way or another on any contested issue of fact.

The courts are almost unanimous in holding that the receipt of evidence in violation of the collateral source rule is harmful. 7 A.L.R.3d 516; Eichel v. New York Central Railroad Co., 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307; R. E. Dumas Milner Chevrolet Co. v. Morphis, 337 S.W.2d 185, 188 (Ft. Worth Tex.Civ.App., 1960, error ref. n. r. e.).

Defendant calls to our attention the language found in General Accident Fire & Life Assurance Corp. v. Coffman, 326 S.W.2d 287, 291 (Waco Tex.Civ.App., 1959, error ref. n. r. e.), that "since the lump

2. The language of Justice Walker in *Kainer* which is urged upon us in this case is this: "We are not prepared to say that evidence of that nature [payments from collateral sources] can never be received, but it should be excluded unless clearly relevant and with substantial probative value on some disputed issue in the case." To this we add that, on rehearing, Justice Walker referred to Eichel v. New York Central Railroad Co., 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307, as being "additional support for our conclusion that the trial court would have erred if evidence of disability payments had been admitted in the present case." (377 S.W. 2d at p. 618.)

sum settlement is for the purpose of doing as near as possible equity for the employee it follows that more than ordinary latitude should be granted in the investigation of the issue in order to determine whether manifest hardship and injustices will result to an employee if compensation is not paid in a lump sum." There, plaintiff's wife "did some day work part time for 50¢ per hour"—and, plaintiff had received $1,000.00 as a lump sum for a prior compensation claim.

Thus, Coffman had two sources of collateral income: his wife's meager earnings and the thousand dollar settlement. We are not in serious disagreement with the Waco Court when it holds that evidence of how the plaintiff handled "any large sum of money" might be material in determining his ability to handle the lump sum he sought there. However, if the reversal there was predicated upon the wife's earnings, it seems that the case is out of step with the well-reasoned opinions relating to the collateral source rule. Here, Johnson was receiving $80.00 per month from the Veterans Administration. Under no circumstances could it be considered a "large sum"; and, certainly, the defendant here had done nothing to entitle Johnson to the payments he was receiving.[3]

Significantly, we note that the trial judge excluded the evidence sua sponte and without any objection from plaintiff. The admission of the proffered testimony would have brought to the knowledge of the jurors that an agency of the United States Government had already found, on undisclosed evidence, that plaintiff was totally disabled—an issue which was for the determination of the jurors upon the basis of the evidence they had heard from the witnesses upon the trial. Had such evidence been admitted, plaintiff's counsel would have been well within his rights to have argued that the Veterans Administration had found the plaintiff to be totally disabled and was paying him therefor. Granted that such argument would have been confined to the lump sum issue under instructions of the Court, there are some who doubt the effectiveness of a limiting instruction.[4] Such an instruction could lessen but not remove the confusion caused by its admission. *Reed,* supra.

In our case, there was no real dispute over the issue of lump sum payment. Both the plaintiff and his wife testified and the defendant did not ask a single question of either on the subject, nor did it offer any evidence to dispute their testimony. Adopting the language of *Eichel,* supra, "In our view the likelihood of misuse by the jury clearly outweighs the value of this evidence." (375 U.S. at 255, 84 S.Ct. at 317, 11 L.Ed.2d at p. 309.) We do not believe, to use the language of Justice Walker in *Kainer,* supra, that it had "substantial probative value on some disputed issue in the case." (377 S.W.2d at p. 617.) Instead, we prefer to follow *Reed,* wherein this language was used:

"We believe, as stated in [R. E. Dumas Milner] Chevrolet Co. v. Morphis, supra, and Eichel v. [New York Central] Railroad Co., supra, and in many of the authorities heretofore cited, that the injection of collateral matters, even though the jury may be instructed as to the limited purpose for which the testimony

---

3. Plaintiff was receiving this payment from the Veterans Administration because he was a World War II veteran who had been found to be totally disabled by the Veterans Administration. The issue before the jury was whether or not Johnson was totally disabled from the accident involved here—a question for the jury's determination upon the basis of the facts introduced in evidence before them, not what some governmental agency had done upon evidence wholly unknown to either the jury or to the court. The evidence offered was completely foreign to the main issue in this case.

4. "The naive assumption that prejudicial effects can be overcome by instructions to the jury, * * * all practicing lawyers know to be unmitigated fiction." Jackson, J., dissenting in Krulewitch v. United States, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790, 799 (1949).

is admitted, might tend to complicate and confuse the issues of a trial. This confusing feature would be injected into any case, regardless of or perhaps even more so by reason of any special instructions to the jury as to the limited purpose for which the testimony might be considered, if collateral benefits are opened up, and the trial becomes complicated by determinations of other parties as to what constitutes disability, and complicated and confused by questions of how much the injured party is receiving from collateral sources as the result of his disability. In such event it is quite likely that the true rights of the parties might become lost." (376 S.W.2d at p. 595.)

■ The majority of this court is of the opinion that the trial court did not err in excluding the tendered evidence under the circumstances of this case. We are unanimous that, in any event, its exclusion was harmless error. Rule 434, Texas Rules of Civil Procedure.

The medical treatment and hospitalization of the plaintiff following his injury was furnished by the Veterans Administration, not the defendant. Upon the trial the records of the hospital were introduced by a custodian without objection on the part of the defendant. Since plaintiff sought a recovery of the reasonable cost of such medical attention and hospitalization, it became incumbent upon him to prove the necessity therefor and the reasonable cost thereof. This he undertook to do through his physician, a general practitioner and not a member of the staff of the Veterans Administration Hospital. The defendant now complains that there was "no proper proof of the reasonableness of the charges for nor the necessity of services furnished by the Veterans Administration to the Plaintiff." Ancillary thereto are

the complaints that Dr. Thompson, upon whose testimony the finding rests, did not know the reasonable or customary charge therefor and the jury's finding was, consequently, not supported by sufficient evidence and was contrary to the overwhelming weight and preponderance of the evidence.

■ Dr. Thompson did not profess to be "an expert outside" of his own field, but did give testimony showing his knowledge upon the subject was superior to that of the average layman, and was such that the jury could receive appreciable aid therefrom. The court did not err in admitting the evidence of Dr. Thompson on the subject. Wilson v. Scott, 412 S.W.2d 299, 304 (Tex.Sup., 1967); 2 McCormick & Ray, Texas Law of Evidence, § 1401, p. 235–237 (2d Ed., 1956).

■ Having examined these points under the appropriate standards,[5] we are of the opinion that the points do not reflect error and that the finding of the jury is amply supported by the evidence.

■ Finally, defendant complains because plaintiff's counsel argued that the defendant's contentions "were the most preposterous ever made in the Polk County Courthouse." In raising this point, defendant candidly admits that it did not and does not challenge the finding of total and permanent disability of the plaintiff so that it confines its present complaint to the effect the argument may have had upon its defense on the issue of course and scope of employment. Our record discloses that the incident occurred just as plaintiff's counsel was "warming up" at the beginning of his opening argument. He had just complimented the jury for its attentiveness and the trial judge for the lucid and legally impeccable charge on the law, and warned the jury that his comments would be his

5. In passing upon the "no evidence" point, we consider only the evidence most favorable to the finding and disregard that which is opposed to it. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 613, 23 A.L.R.2d 1114 (1950). However, as to the points raising the "sufficiency" of the evidence question, we consider the entire record. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

own "interpretation" of the evidence of the witnesses. He then proceeded:

"Anything that I may say to you is an interpretation of that evidence. You are free and it is your duty as this jury to give such weight and credence to the witnesses that you have heard from the stand as you feel their evidence is entitled, but I think that it can be said that out of all the cases that this old courtroom has heard, the most preposterous contention that has ever been made in this courthouse is that—

"MR. PATTON: Your Honor, I object as getting outside of the record completely and move that the jury be instructed to disregard it.

"THE COURT: That would be his deduction. Overruled.

"MR. JONES: —is the contention of that insurance company that James B. Johnson was not in the course of his employment when this accident happened and, secondly, that Mr. Johnson sitting right there at that stand is not today and has not been since he suffered that injury totally and permanently disabled.

"Let's look at what the Judge tells you in this charge is the law on this: [whereupon counsel discussed the definition of total incapacity as contained in the charge]."

We have reviewed the argument in connection with the evidence in this case and are not convinced that it was of such a nature as to bring about the rendition of an improper verdict. Lehmann v. Krahl, 155 Tex. 270, 285 S.W.2d 179, 183 (1955); Acuff Gin Co. v. Burton Lingo Co., 383 S.W.2d 256, 258 (Eastland Tex.Civ.App., 1964, error ref. n. r. e.); Rule 434, T.R.C.P. Indeed the argument made is remarkably similar to that found in Brown v. Poff, 387 S.W.2d 101, 107 (El Paso Tex.Civ. App., 1965, error ref. n. r. e., 392 S.W.2d 113 [Tex.Sup.]). The point is overruled.

The judgment of the trial court is in all things affirmed.

STEPHENSON, Justice (concurring).

I concur with the majority of this court that the trial court judgment should be affirmed, but disagree with several statements of law made in its opinion.

First, I feel further discussion of the Supreme Court opinion in this case is necessary. The Supreme Court opinion contains this statement:

"* * * Our inquiry narrows, then, to whether Johnson's personal or private affair of going to work was being 'furthered' by the deviated trip. Unless it was, the dual-purpose rule is not applicable to the facts in this case. This question was not raised or discussed in Janek [Janak] v. Texas Employers Insurance Association, 381 S.W.2d 176 (Tex.Sup.1964). We merely assumed in that case that the injured employee's personal or private affair of going to work was being 'furthered' by the deviated travel. Upon further consideration, we are convinced that we should not have indulged the assumption." (439 S.W.2d at p. 828.)

and:

"* * * As used in the dual-purpose rule in the phrase 'in furtherance of personal or private affairs of the employee,' we think the word 'furtherance' connotes the conferring of a benefit on the employee by helping to forward or advance his personal or private affairs; and we do not think that travel by an employee to or from work over a deviated and less convenient route, undertaken only because directed by the employer, is in 'furtherance' of the employee's personal or private affair of getting to or from work." (Id.)

We held in our first opinion written in this case that plaintiff taking part in the car pool was his personal or private affair. We took judicial knowledge of the fact

that plaintiff would save money in driving his car only every fourth day and he benefitted thereby. It was because of this car pool, and not that plaintiff was getting to and from work, that we held the "dual-purpose rule" was applicable to this case. The Supreme Court opinion makes no mention of the car pool as being either a personal affair or employer's business. We therefore must assume that inasmuch as our first opinion turned this case solely upon a finding that the car pool was a personal affair, that the Supreme Court is now holding that if the employer directs its employee to get into a car pool, participation becomes the employer's business. We must further assume that if the participation in the car pools furthered the employer's business by helping get ice and water to the rig site and by giving the employer assurance that the ice and water would be available, then the fact that the employee would be benefitted by taking part in a car pool would not bring the case under the dual-purpose rule. Accepting this as the law of this state, we must affirm the trial court.

I do not agree with the majority opinion that evidence that plaintiff had received $110.00 per month for some time before trial, and $80.00 per month at the time of trial, from the Veterans Administration was not admissible on the issue of "lump sum". I do not agree that such evidence as to the issue of "lump sum" is prohibited under the collateral source rule. The majority opinion cites Traders & General Insurance Company v. Reed, supra, and Texas General Indemnity Company v. Hamilton, supra. Neither of those cases involved the question before us, as to the admissibility of such evidence where the plaintiff has sought a lump sum, offered evidence of hardship and financial problems and the issue is actually submitted to the jury. The general rule is that the financial condition of a plaintiff is material to the issue of lump sum, however that statement is usually made in a case in which plaintiff has offered the evidence

in support of his claim for lump sum. The case mentioned in the majority opinion, General Accident Fire & Life Assurance Corporation v. Coffman, supra, is apparently the only Texas case passing directly upon the question before us. As stated, the Waco Court of Civil Appeals reversed and remanded the case because of the trial court's refusal to permit the defendant to show a collateral source of income on the lump sum issue. I think the evidence offered was clearly admissible, but I agree with the majority that under the circumstances of this case there was not reversible error under Rule 434.